## UNITED STATES COURT OF INTERNATIONAL TRADE

)
SOLAR ENERGY INDUSTRIES )
ASSOCIATION, NEXTERA ENERGY, INC., )
INVENERGY RENEWABLES LLC, and EDF )
RENEWABLES, INC., )
)
                 Plaintiffs, )
)
     v. )
)
UNITED STATES, UNITED STATES )     Court No. 20-03941
CUSTOMS AND BORDER PROTECTION, )
and MARK A. MORGAN, in his official capacity )
as Acting Commissioner of United States Customs )
and Border Protection, )
)
                 Defendants. )
)

## COMPLAINT

1.      Plaintiffs the Solar Energy Industries Association ("SEIA"), NextEra Energy, Inc. ("NextEra"), Invenergy Renewables LLC ("Invenergy"), and EDF Renewables, Inc. ("EDF-R"), by and through their attorneys, bring this action to challenge Presidential Proclamation 10101 of October 10, 2020. *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020) ("Modification Proclamation"). The Modification Proclamation will result in imposition of hundreds of millions of dollars in additional tariffs on imported crystalline silicon photovoltaic ("CSPV") solar panels, which are essential to the deployment of clean, solar energy in the United States.

2.      The Modification Proclamation reflects the latest attempt by the Trump Administration to increase Section 201 safeguard duties on imported solar panels. The Trump

Administration twice previously sought to withdraw the exclusion of bifacial solar panels from the CSPV safeguard measure.  Both of those attempts were enjoined as likely unlawful, because the Trump Administration had failed to abide by the requirements of the Administrative Procedure Act and had failed to offer a reasoned basis for withdrawing the exclusion—an exclusion that the Trump Administration had previously found to be consistent with the objectives of the safeguard measure.

3.     While the prior attempts to withdraw the bifacial module exclusion remained enjoined, President Trump issued the Modification Proclamation, which again withdrew the exclusion for bifacial solar panels.  President Trump further asserted that the exclusion that the Administration had granted for bifacial solar panels had impaired the remedial effect of the CSPV safeguard measure.  President Trump then relied on that finding to justify an increase in the tariff rate for all CSPV products in the fourth year of the CSPV safeguard measure, from 15% to 18%.

4.     The Modification Proclamation is just as unlawful as the Trump Administration's prior attempts to withdraw the bifacial module exclusion, albeit for different reasons.  In issuing the Modification Proclamation, President Trump relied on a statutory provision that was intended to be used to liberalize trade when the protections of the original safeguard measure are no longer necessary.  Instead, he used this provision to increase restrictions on trade.  Moreover, President Trump failed to make the findings that the statute requires before a safeguard measure can be modified pursuant to the provision he invoked.  President Trump additionally failed to abide by the procedures established by Congress for re-imposing safeguard duties on articles that had previously been subject to safeguard duties.  In these respects, the Modification Proclamation is similar to the prior attempts to withdraw the bifacial panel exclusion, as the

Trump Administration has failed to follow the required procedures and to make the necessary findings before acting.

5.      The imposition of safeguard duties is an extraordinary act.  Congress created a statutory scheme that is intended to balance the interests of all affected parties, and the procedures that Congress created for imposing and modifying safeguard measures were meant to be followed.  The President cannot ignore them or rewrite them himself in order to achieve his desired policy outcomes.  Plaintiffs accordingly ask that the President be required to abide by the law and for the Modification Proclamation to be enjoined and set aside.

## THE PARTIES

6.      Plaintiff the Solar Energy Industries Association is a 501(c)(6) non-profit trade association organized under the laws of the District of Columbia and headquartered in Washington, D.C.  SEIA is the national trade association for the U.S. solar industry, with hundreds of member companies.  SEIA members include companies throughout the solar value chain, including importers, manufacturers, distributors, installers, and project developers.

7.      Plaintiff NextEra Energy, Inc. is a leading clean energy company incorporated in Florida and headquartered in Juno Beach, Florida.  NextEra is one of the largest electric power and energy infrastructure companies in North America and a leader in the renewable energy industry.

8.      Plaintiff Invenergy Renewables, LLC, is the world's leading independent and privately-held renewable energy company.  Its home office is located in Chicago, Illinois, and it has regional development offices throughout the United States.  Invenergy develops, owns, and operates large-scale renewable and other clean energy generation facilities around the world.

9.     Plaintiff EDF Renewables, Inc. is a corporation organized under the laws of the state of Delaware and headquartered in San Diego, California.  EDF-R has more than 30 years of expertise in the renewable energy industry.  The primary technology focus of EDF-R is renewable energy—wind, solar, energy storage, and offshore wind.

10.    Defendant United States is the federal government of the United States of America.

11.    Defendant United States Customs and Border Protection is an executive agency of the U.S. Government and a component of the Department of Homeland Security.  It is headquartered at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

12.    Defendant Mark A. Morgan is the Acting Commissioner of CBP.  He is sued in his official capacity.

## JURISDICTION

13.    This Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(B)-(D).

14.    The tariff rate quota on solar cells and the additional tariff imposed on solar modules, including those ordered to be re-imposed on bifacial solar modules, were imposed pursuant to Section 201 of the Trade Act of 1974.  Chapter 1 of title II of the Trade Act of 1974, which includes Section 201, is a law "providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and "quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety."  This action thus arises out of a law described in 28 U.S.C. § 1581(i)(1)(B) and (C).

15.    Plaintiffs seek a declaration that the Modification Proclamation is unlawful and an injunction prohibiting its enforcement.  Plaintiffs' claims thus also arise out of the

"administration and enforcement with respect to matters referred to in subparagraphs (A) through (C)" of 28 U.S.C. § 1581(i)(1), and the Court therefore has jurisdiction under 28 U.S.C. § 1581(i)(1)(D) as well.

## STANDING

16.     As parties adversely affected or aggrieved by the increase in safeguard duties stemming from the Modification Proclamation, Plaintiffs have standing to challenge the Proclamation and resulting duties.

17.     NextEra, Invenergy, and EDF-R source imported solar modules, including bifacial solar modules, for use in the development of their solar projects.  These modules are directly subject to the challenged Modification Proclamation.  NextEra, Invenergy, and EDF-R face substantial injury as a result of the re-imposition of safeguard duties on bifacial CSPV panels and the increase in the duty rate on imported CSPV panels in the fourth year of the safeguard measure.  The increased duties are being passed on to NextEra, Invenergy, and EDF-R by their suppliers who are incurring the duties, which increases the companies' costs of doing business and reduces their ability to expand the development of solar projects throughout the United States.

18.     NextEra and EDF-R periodically act as importers of record for entries of solar panels.  In those instances, NextEra and EDF-R would be directly responsible for payment of safeguard duties.

19.     SEIA, in turn, has standing to bring this suit on behalf of its members, who are adversely affected by the Modification Proclamation and the additional duties collected by CBP. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are

germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Biotech. Indus. v. District of Columbia*, 496 F.3d 1362, 1369 (Fed. Cir. 2007) (quoting *United Food & Commercial Workers v. Brown Group*, 517 U.S. 544, 553 (1996)).

20.     Members of SEIA would have standing to sue in their own right because they are adversely affected or aggrieved by the challenged action.  SEIA's members include importers, purchasers, and users of the imported solar products subject to the safeguard action, who will pay directly or indirectly for the increased tariffs announced in the Modification Proclamation.  The interest that SEIA seeks to protect in this lawsuit is germane to its purpose.  SEIA's organizational interest is to grow solar energy in the United States, and the Modification Proclamation threatens that interest in that the increased tariffs raise costs and reduce the competitiveness of solar energy.  Finally, although certain individual SEIA members are participating in this action (Invenergy and EDF-R), the legal claims raised by SEIA and the declaratory judgment and injunction requested below do not "require" the participation of individual SEIA members as plaintiffs in the lawsuit because the claims and relief are not member-specific.

## **TIMELINESS OF THIS ACTION**

21.     An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues.  28 U.S.C. § 2636(i).

22.     The Modification Proclamation was published in the Federal Register on October 16, 2020.  Plaintiffs' claims accrued, at the earliest, on the date that the Modification Proclamation published in the Federal Register.  Plaintiffs have therefore timely filed this action.

<u>**HISTORY REGARDING THE CHALLENGED CONDUCT**</u>

<u>*Issuance of the Solar Safeguard Measure*</u>

23.     On May 23, 2017, the U.S. International Trade Commission ("ITC") initiated a "safeguard" investigation under Chapter 1 of title II of the Trade Act of 1974, 19 U.S.C. § 2251 et seq., of CSPV cells (whether or not partially assembled into other products).  *See Crystalline Silicon Photovoltaic Cells' (Whether or Not Partially or Fully Assembled Into Other Products); Institution and Scheduling of Safeguard Investigation and Determination That the Investigation Is Extraordinarily Complicated*, 82 Fed. Reg. 25,331 (Int'l Trade Comm'n June 1, 2017).  CSPV cells are products that convert the sun's energy into electricity.

24.     On November 13, 2017, the ITC transmitted to the President a report on its investigation, finding that certain CSPV products were being imported into the United States in such increased quantities as to be a substantial cause of serious injury, or threat of serious injury, to the domestic industry producing a like or directly competitive article.  *See* Presidential Proclamation 9693, *To Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products) and for Other Purposes*, 83 Fed. Reg. 3541, 3541 (Jan. 25, 2018).  The ITC submitted a supplemental report on December 27, 2017 identifying unforeseen developments that led to the importation of CSPV products into the United States in such increased quantities as to be a substantial cause of serious injury.  *Id.*

25.     Following receipt of the ITC reports and the Commissioners' recommendations regarding the appropriate actions to address the serious injury to the domestic industry, the President issued Proclamation 9693 on January 23, 2018, imposing a safeguard measure of a type described in Section 203(a)(3) of the Trade Act with regard to certain CSPV products.  *See*

*id.* at 3541-51.  As relevant to this case, the President imposed a tariff rate quota on CSPV cells

and an additional duty on CSPV modules at the following rates:

> If entered during the period from
> February 7, 2018 through February 6, 2019 . . . . . . . . .  30%
>
> If entered during the period from
> February 7, 2019 through February 6, 2020 . . . . . . . . .  25%
>
> If entered during the period from
> February 7, 2020 through February 6, 2021 . . . . . . . . .  20%
>
> If entered during the period from
> February 7, 2021 through February 6, 2022 . . . . . . . . .  15%

### *Exclusion of Bifacial CSPV Modules*

26.     Presidential Proclamation 9693 also provided that "[w]ithin 30 days after the date

of this proclamation, the USTR [United States Trade Representative] shall publish in the *Federal*

*Register* procedures for requests for exclusion of a particular product from the safeguard measure

established in this proclamation.  If the USTR determines, after consultation with the Secretaries

of Commerce and Energy, that a particular product should be excluded, the USTR is authorized,

upon publishing a notice of such determination in the *Federal Register*, to modify the HTS

provisions created by Annex I to this proclamation to exclude such particular product from the

safeguard measure . . . ."  *Id.* at 3543-44.

27.     On February 14, 2018, USTR published a notice setting out the procedures to

request a product exclusion and opened a public docket on the Federal eRulemaking Portal,

http://www.regulations.gov, for the submission of exclusion requests and comments regarding

submitted requests.  *See Procedures To Consider Additional Requests for Exclusion of*

*Particular Products From the Solar Products Safeguard Measure*, 83 Fed. Reg. 6670 (USTR

Feb. 14, 2018).  USTR's notice did not restrict who could request an exclusion.  *See id.*  USTR

required exclusion requests to be received by March 16, 2018 and any responsive comments to be received by April 16, 2018.  *See id.* at 6670, 6672.  USTR stated that it would "evaluate each request on a case-by-case basis" and "grant only those exclusions that do not undermine the objectives of the safeguard measures."  *Id.* at 6671.  The notice establishing the exclusion process did not include any reference to the possibility that a granted exclusion could be modified or withdrawn at a later date.

28.     Several interested parties timely filed exclusion requests with USTR or commented on exclusion requests for bifacial modules and bifacial solar cells filed with USTR, which are products that absorb light and generate electricity on each side of the panel or cell.  *See Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. 27,684, 27,684 (USTR June 13, 2019).  Several SEIA members participated in the development of a request submitted by Pine Gate Renewables LLC to USTR for the exclusion of bifacial modules.

29.     Because light is absorbed and electricity is generated from each side of a bifacial solar panel, bifacial panels increase total energy production.  A single bifacial module increases energy output between 5% and 20%, which means that for the same project, using monofacial modules would require more panels, more racking, more land, and more foundation to achieve the same energy output.

30.     On June 13, 2019, USTR published a notice in the Federal Register granting an exclusion from the safeguards action for "bifacial solar panels that absorb light and generate electricity on each side of the panel and that consist of only bifacial solar cells that absorb light and generate electricity on each side of the cells."  *Exclusion of Particular Products From the Solar Products Safeguard Measure*, 84 Fed. Reg. at 27,685.  In granting the exclusion, USTR

stated that it had evaluated the factors laid out in the February 14, 2018 notice, including the requirement that the exclusion not undermine the objectives of the safeguard measures.  *See id.* at 27,684.  USTR's notice did not contain any indication that the granted exclusion might be re-visited, modified, or withdrawn in the future.

31.     Many companies, including Plaintiffs, relied on the exclusion in establishing the price of modules to be used in their contracts.  Solar projects take years to develop and coordination is required at multiple levels.  Project success depends on all elements of the project—including the supply and pricing of equipment, obtaining requisite permits, project financing, timely construction, interconnection to the electric grid, and entering into power purchase agreements with utility customers—coming together at the right time.  Because solar modules are the primary components of a solar project, any variation in their price or an inability to timely procure modules will drastically impact the viability of the solar project and may threaten the project altogether.

### *USTR's Attempts to Withdraw the Bifacial CSPV Module Exclusion and Resulting Litigation*

32.     On October 9, 2019, USTR published a notice in the Federal Register that the exclusion for bifacial solar panels would be withdrawn, effective October 28, 2019, meaning that imported bifacial CSPV products would again be subject to the CSPV safeguard action.  *See Withdrawal of Bifacial Solar Panels Exclusion to the Solar Products Safeguard Measure*, 84 Fed. Reg. 54,244 (USTR Oct. 9, 2019).  The withdrawal of the bifacial module exclusion was not subject to any formal notice and comment.

33.     Invenergy instituted an action in the U.S. Court of International Trade challenging the withdrawal of the bifacial panel exclusion by filing a summons, complaint, and motion for a temporary restraining order.  *See Invenergy Renewables, LLC et al. v. United States et al.*, Court

No. 19-00192 (Ct. Int'l Trade).  SEIA and EDF-R intervened in that action as a plaintiff-intervenors.

34.     On November 7, 2019, the Court issued a temporary restraining order preventing USTR's initial withdrawal of the bifacial module exclusion from going into effect, and the Court extended the temporary restraining order by 14 days on November 21, 2019.  The Court issued a preliminary injunction on December 5, 2019, prohibiting the withdrawal of the bifacial module exclusion "until entry of final judgment as to Plaintiffs' claims against Defendants in this case." *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1295 (2019).

35.     In its opinion accompanying the preliminary injunction order, the Court concluded that Invenergy, SEIA, EDF-R, and other plaintiff-intervenors had standing to challenge the withdrawal of the bifacial module exclusion.  *Id.* at 1271, 1279-80.  The Court then went on to address the four factors traditionally associated with requests for preliminary injunctions: (1) whether the plaintiff is likely to succeed on the merits; (2) whether the plaintiff likely would suffer irreparable harm without the preliminary injunction; (3) whether the balance of hardships favors the plaintiff; and (4) whether the preliminary injunction would serve the public interest.  The Court concluded that all four factors weighed in favor of issuing a preliminary injunction.  *Id.* at 1280.  On the issue of likelihood of success, the Court concluded that the plaintiffs had established a fair likelihood of success that USTR violated the notice-and-comment rulemaking requirements of the Administrative Procedure Act ("APA").  *Id.* at 1281-87.  The Court also concluded that USTR's decision to withdraw the bifacial module exclusion was likely arbitrary and capricious.  *Id.* at 1287-88.

36.     Following entry of the preliminary injunction, USTR published a notice in the Federal Register establishing a procedure to consider the withdrawal of the bifacial module

exclusion and inviting comments as to whether USTR "should maintain the exclusion of bifacial solar panels from the safeguard measure, withdraw the exclusion, or take some other action within his authority with respect to this exclusion." *See Procedures To Consider Retention or Withdrawal of the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 4756, 4756 (USTR Jan. 27, 2020).  USTR stated that "[i]f the U.S. Trade Representative determines after receipt of comments pursuant to this notice that it would be appropriate to withdraw the bifacial module exclusion or take some other action with respect to this exclusion, the U.S. Trade Representative will request that the Court lift the injunction" against withdrawing the exclusion.  *Id.*

37.     SEIA and several of its members, including Invenergy and EDF-R, timely submitted comments and information in support of maintaining the bifacial module exclusion and suggested certain modifications to the exclusion that would address the main concerns that had been raised regarding the impact on domestic CSPV module manufacturers of excluding all bifacial CSPV modules.

38.     Following this comment process, USTR published a determination in the Federal Register on April 17, 2020 again stating that the bifacial module exclusion should be completely withdrawn.  *Determination on the Exclusion of Bifacial Solar Panels From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 21,497 (USTR Apr. 17, 2020) (hereinafter, the "April USTR Notice").  The April USTR Notice explained that "the U.S. Trade Representative will request that the U.S. Court of International Trade lift the order preliminarily enjoining the withdrawal from entering into effect."  *Id.* at 21,497.  The April USTR Notice failed to cite to or discuss any individual submission that was placed on the record by interested parties, and many

of the arguments and proposals raised by SEIA and its members were left completely

unaddressed.

39.     The Government first moved to lift the preliminary injunction on April 16, 2020,

the day before the April USTR Notice was actually published in the Federal Register.  On May

27, 2020, the Court issued an opinion denying the Government's motion to dissolve the

preliminary injunction, finding that the Government had not proved sufficiently changed

circumstances to dissolve the preliminary injunction.  *Invenergy Renewables LLC v. United*

*States*, 450 F. Supp. 3d 1347, 1363-64 (2020).  The Court also granted the motions of Invenergy,

SEIA, EDF-R, and the other plaintiff-intervenors to amend their complaints to include a

challenge to the April USTR Notice.  *Id.* at 1358.

40.     In response to the Court's May 27, 2020 opinion, USTR published a notice on

June 12, 2020 purporting to rescind USTR's original October 2019 notice withdrawing the

bifacial module exclusion.  *Rescission of the First Withdrawal of the Bifacial Solar Panels*

*Exclusion From the Safeguard Measure on Solar Products*, 85 Fed. Reg. 35,975 (USTR June 12,

2020).  On the same day, the Government filed a renewed motion to dissolve the preliminary

injunction.

41.     The Court issued an opinion on October 15, 2020, denying the Government's

second motion to dissolve the preliminary injunction and granting the plaintiffs' cross-motion to

modify the preliminary injunction to explicitly cover the April USTR Notice.  *Invenergy*

*Renewables LLC v. United States*, No. 19-00192, 2020 WL 6075674 (Ct. Int'l Trade Oct. 15,

2020).  The Court held that the April USTR Notice was likely arbitrary and capricious, which

warranted modification of the preliminary injunction.  *Id.* at *9.  The Court further held on the

merits that USTR's original October 2019 notice violated the APA for the reasons stated in the

December 5, 2019 opinion accompanying the preliminary injunction order. *Id.* at *7. The Court therefore vacated USTR's original withdrawal notice. *Id.*

### *Presidential Modification Proclamation*

42.     Just days prior to the issuance of the Court's October 15, 2020 opinion, President Trump issued the Modification Proclamation, effective October 25, 2020. 85 Fed. Reg. at 65,640-42. The Modification Proclamation was published in the Federal Register on October 16, 2020.

43.     The Modification Proclamation—the Government's *third* attempt to withdraw the bifacial CSPV module exclusion—had three primary effects.

44.     First, the Modification Proclamation re-imposed Section 201 safeguard duties on bifacial modules. *Id.* at 65,640, 65,642.

45.     Second, the Modification Proclamation also increased Section 201 safeguard tariffs on imported CSPV products, including but not limited to bifacial CSPV modules, in year four of the CSPV safeguard measure (February 7, 2021 through February 6, 2022) from 15% to 18%. The stated rationale for this tariff increase was that the exclusion of bifacial modules had supposedly impaired the remedial effect of the original safeguard measure.

46.     Finally, the Modification Proclamation modified the HTS to reflect the re-imposition of Section 201 safeguard duties on bifacial CSPV modules and the increase in the Section 201 duty rate for year four of the CSPV safeguard measure. *Id.* at 65,640-42.

47.     As authority for the action taken in the Modification Proclamation, the President cited section 204(b)(1)(B) of the Trade Act of 1974, 19 U.S.C. § 2254(b)(1)(B), which allows the President to reduce, modify, or terminate Section 201 safeguard measures if he "determines, after a majority of the representatives of the domestic industry submits to the President a petition

requesting such reduction, modification or termination on such basis, that the domestic industry

has made a positive adjustment to import competition."  The President asserted that he had

received a petition from the domestic industry, and he found that the domestic industry "has

begun to make positive adjustments to import competition."  85 Fed. Reg. at 65,640.  The

President did not specify which petition he was referring to, and Plaintiffs are not aware of any

petition having actually been submitted to the President.

48.     Invenergy, SEIA, EDF-R, and the other plaintiff-intervenors filed motions in

Court No. 19-00192 to supplement their complaints to include challenges to the Modification

Proclamation and to modify the existing preliminary injunction to cover the Modification

Proclamation.  The Court issued a temporary restraining order on October 24, 2020, barring the

Government from enforcing the Modification Proclamation.  *Invenergy Renewables LLC v.

United States*, No. 19-00192, 2020 WL 6791576, at *1 (Ct. Int'l Trade Nov. 19, 2020).  The

Court extended the temporary restraining order on November 6, 2020.  *Id.*  In an opinion issued

on November 19, 2020, the Court denied the motions to supplement the complaints and

concluded that any further recourse regarding the Modification Proclamation should be sought

through a separate action.  *Id.* at *1, *9.

49.     In the November 29, 2020 opinion, the Court also lifted the temporary restraining

order and denied the motion to modify the preliminary injunction.  *Id.*  CBP subsequently issued

a bulletin advising that "CBP will begin enforcing the revocation of the [bifacial module

exclusion] on merchandise entered or withdrawn from warehouse for consumption on or after

12:01 a.m. October 25, 2020."  U.S. Customs and Border Protection Cargo Systems Messaging

Service Message No. 45000915 (Nov. 27, 2020).

*Impact of the Modification Proclamation*

50.     The Modification Proclamation will cause significant economic and business reputational harm to SEIA members, including Invenergy and EDF-R, and to NextEra.  SEIA estimates that the Modification Proclamation will result in hundreds of millions of dollars in additional tariffs being applied to imported CSPV products, many of which are essential to utility-scale solar projects.  Domestic manufactures can supply only a minor fraction of the projected overall demand for utility-scale solar projects.  The Modification Proclamation will therefore adversely impact the development of clean solar energy in the United States by raising the cost of solar projects and solar energy, contrary to the interests of Plaintiffs.  Fewer solar projects means fewer jobs and fewer homes and businesses being powered by clean, renewable solar energy.

51.     Plaintiffs bring this complaint seeking a declaration that the President's Modification Proclamation is unlawful and to enjoin its enforcement.

52.     NextEra and EDF-R also seeks an order that any increased Section 201 duties collected from them pursuant to the Modification Proclamation to the extent they act as importer of record be refunded, with interest.

## STATEMENT OF CLAIMS

53.     In the following respects, the President's Modification Proclamation and its implementation are not in accordance with law.

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF SECTION 204 OF THE TRADE ACT)

54.     Paragraphs 1 through 53 of this Complaint are hereby incorporated by reference.

55.     A presidential action may be set aside if the President's action involves "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority."  *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1346 (Fed. Cir. 2018); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985); *Motion Systems Corp. v. Bush*, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc) (stating that court may consider whether the President has violated an explicit statutory mandate).  The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

56.     In modifying the CSPV safeguard measure, President Trump invoked Section 204(b)(1)(B), 19 U.S.C. § 2254(b)(1)(B).  That section provides in relevant part that:

> Action taken under section 2253 of this title [Section 203 of the Trade Act] may be reduced, modified, or terminated by the President if the President . . . determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification, or termination on such basis, that the domestic industry has made a positive adjustment to import competition.

57.     Section 204(b)(1)(B) authorizes modifications of a safeguard measure in response to an industry petition only if they are trade liberalizing—as indicated by the fact that such modifications can occur only if "the domestic industry has made a positive adjustment to import competition."  Section 601(6) of the Trade Act of 1974 also explains that for purposes of the Act, "[t]he term 'modification,' as applied to any duty or other import restriction, includes the elimination of any duty or other import restriction," which indicates that modifications under the Act generally were intended by Congress to be trade liberalizing, rather than trade restricting.  19 U.S.C § 2481(6).

58.     Both changes to the CSPV safeguard measure proclaimed in the Modification

Proclamation—the withdrawal of the bifacial module exclusion and the increase in the duty rate

in year four of the measure—place further restrictions on trade.  The changes to the CSPV

safeguard measure were therefore made in violation of the substantive limitations of Section 204

of the Trade Act governing modifications of safeguard actions and must be set aside as action

involving "a clear misconstruction of the governing statute . . . or action outside delegated

authority."  *Silfab*, 892 F.3d at 1346.

59.     Section 204(b) of the Trade Act of 1974, 19 U.S.C. § 2254(b), also sets

procedural requirements that must be followed and requires certain findings to be made by the

President before a safeguard action can be modified.  But those prerequisites to Presidential

action regarding the petition were not satisfied.

60.     Among other things, the President failed to make the finding that is required in

order to take action under Section 204(b)(1)(B)—that "the domestic industry *has made* a positive

adjustment to import competition."  19 U.S.C. § 2254(b)(1)(B) (emphasis added).  Section

201(b)(1) provides that "a positive adjustment to import competition occurs when (A) the

domestic industry (i) is able to compete successfully with imports after actions taken under

section 2254 of this title terminate, or (ii) the domestic industry experiences an orderly transfer

of resources to other productive pursuits; and (B) dislocated workers in the industry experience

an orderly transition to productive pursuits."  19 U.S.C. § 2251(b)(1).  The President found only

that the domestic industry "*has begun to make* positive adjustments to import competition,"

Modification Proclamation, 85 Fed. Reg. at 65,640 (emphasis added), which is not a finding that

the industry "has made" the adjustment required for action under Section 204(b)(1)(B).

61.     Moreover, the President failed to show that "a majority of the representatives of the domestic industry" submitted "a petition requesting such reduction, modification, or termination on such basis."  The President did not identify the representatives of the domestic industry that he claimed had petitioned for a modification, and the government has not published the claimed petition or otherwise made it available for review.  Upon information and belief, no petition meeting the criteria of Section 204(b)(1)(B) was submitted to the President prior to his issuance of the Modification Proclamation.

62.     The changes to the CSPV safeguard measure proclaimed in the Modification Proclamation—the withdrawal of the bifacial module exclusion and the change in the duty rate in year four of the measure—were therefore made in violation of the procedural requirements of Section 204 of the Trade Act governing modifications of safeguard actions.  The Modification Proclamation must therefore be set aside as action involving "a clear misconstruction of the governing statute [or] a significant procedural violation."  *Silfab*, 892 F.3d at 1346.

## COUNT TWO

### (DECLARATORY JUDGMENT—VIOLATION OF SECTION 203 OF THE TRADE ACT)

63.     Paragraphs 1 through 62 of this Complaint are hereby incorporated by reference.

64.     Section 203(e)(7) of the Trade Act of 1974, 19 U.S.C. § 2253(e)(7), does not permit a safeguard measure to be re-imposed on an article for a period of two years after the prior measure terminated.

65.     The prior action terminated with respect to bifacial CSPV panels in June 2019, when the exclusion for bifacial CSPV panels was granted.  Accordingly, "no new action may be taken" to re-impose a safeguard measure on those panels until June 2021 at the earliest.

66.     The withdrawal of the exclusion for bifacial CSPV modules in October 2020 results in the imposition of safeguard duties on those modules less than two years after a safeguard measure was terminated with respect to those modules, in violation of Section 203(e)(7) of the Trade Act.

67.     Accordingly, the Modification Proclamation's withdrawal of the exclusion must be set aside as action involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

## COUNT THREE

## (DECLARATORY JUDGMENT—VIOLATION OF SECTION 201 OF THE TRADE ACT)

68.     Paragraphs 1 through 67 of this Complaint are hereby incorporated by reference.

69.     Section 201(a) of the Trade Act of 1974 provides that "the President, in accordance with this part, shall take all appropriate and feasible action within his power which the President determines will facilitate efforts by the domestic industry to make a positive adjustment to import competition and provide greater economic and social benefits than costs." 19 U.S.C. § 2251(a).  Section 201 does not exclude action taken in accordance with Section 204 from the requirement that the action "provide greater economic and social benefits than costs."

70.     In issuing the Modification Proclamation, the President failed to consider and did not make any determination regarding the relative economic and social benefits and costs before modifying the safeguard measure.

71.     The President therefore failed to comply with the procedural and substantive requirements of the statute, and the Modification Proclamation must be set aside as action involving "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Silfab*, 892 F.3d at 1346.

## DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.      Issue a declaratory judgment that the Modification Proclamation is unlawful and therefore null and void;

2.      Permanently enjoin Defendants, their agencies, officers, employees, and agents from enforcing the Modification Proclamation;

3.      Permanently enjoin Defendants from modifying the Harmonized Tariff Schedule of the United States ("HTSUS") to reflect the Modification Proclamation;

4.      Order that any increased Section 201 safeguard duties collected directly from NextEra or EDF-R pursuant to the Modification Proclamation be refunded, with interest; and

5.      Provide such further relief as this Court deems just and proper.


                                        Respectfully submitted,


                                        /s/ Matthew R. Nicely
                                        Matthew R. Nicely
                                        James E. Tysse
                                        Daniel M. Witkowski
                                        Devin S. Sikes
                                        Julia K. Eppard
                                        **AKIN GUMP STRAUSS HAUER &
                                        FELD LLP**
                                        2001 K Street, N.W.
                                        Washington, D.C. 20006
                                        (202) 887-4000
                                        mnicely@akingump.com

                                        *Counsel to SEIA and NextEra Energy, Inc.*

John Brew
Larry Eisenstat
Amanda Shafer Berman
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 624-2500

/s/ Frances Hadfield
Frances Hadfield
**CROWELL & MORING LLP**
590 Madison Ave, 20th Floor
New York, NY 10022
(212) 803-4040
fhadfield@crowell.com

*Counsel to Invenergy Renewables, LLC*

/s/ Kevin O'Brien
Kevin M. O'Brien
Christine M. Streatfeild
**BAKER & MCKENZIE LLP**
815 Connecticut Ave, N.W.
Washington, D.C. 20006
(202) 452-7000
kevin.obrien@bakermckenzie.com

*Counsel to EDF Renewables, Inc*

Dated: December 29, 2020