**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| SOLAR ENERGY INDUSTRIES ASSOCIATION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, et al., | ) ) |
| Defendants. | ) ) ) |

Court No. 20-03941

<u>PROPOSED ORDER</u>

Upon reading Plaintiffs' Motion for Expedited Discovery to Compel Production of Petition

from Domestic Industry, and upon other papers and proceedings herein, it is hereby

ORDERED that Motion is granted; and it is further

ORDERED that Defendants shall produce the Petition from Domestic Industry, or inform

this Court that it does not exist, by March 26, 2021.


_____
Judge

Dated:   March          , 2021
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| SOLAR ENERGY INDUSTRIES ASSOCIATION, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, et al. | ) ) |
| Defendants. | ) ) ) |

## MOTION FOR EXPEDITED DISCOVERY TO COMPEL PRODUCTION OF PETITION AND SUPPORTING MEMORANDUM OF LAW

Amanda Shafer Berman
John Brew
Larry Eisenstat
Amanda Shafer Berman
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 624-2500
aberman@crowell.com

/s/ Frances Hadfield
**CROWELL & MORING LLP**
590 Madison Ave, 20th Floor
New York, NY 10022
(212) 803-4040

*Counsel to Invenergy Renewables, LLC*

/s/ Kevin O'Brien
Kevin M. O'Brien
Christine M. Streatfeild
**BAKER & MCKENZIE LLP**
815 Connecticut Ave, NW
Washington, DC 20006
(202) 452-7000
kevin.obrien@bakermckenzie.com

*Counsel for EDF Renewables, Inc.*

/s/ Matthew R. Nicely
Matthew R. Nicely
James E. Tysse
Daniel M. Witkowski
Devin S. Sikes
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4000
mnicely@akingump.com

*Counsel to SEIA and NextEra Energy, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND....................................................................................................2

LEGAL STANDARDS ...........................................................................................................4

ARGUMENT...........................................................................................................................5

I.     PRODUCTION OF THE PETITION IS ESSENTIAL TO THE
RESOLUTION OF THE GOVERNMENT'S MOTION TO DISMISS
AND THIS CASE...........................................................................................................5

II.    EXPEDITED DISCOVERY OF THE PETITION IS WARRANTED..........................11

CONCLUSION......................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Parsons*,
    75 F.R.D. 536 (W.D. Mich. 1977) ...........................................................5

*Anker v. G.D. Searle & Co.*,
    126 F.R.D. 515 (M.D.N.C. 1989) ...........................................................5

*Ayyash v. Bank Al—Madina*,
    233 F.R.D. 325 (S.D.N.Y. 2005) ...........................................................12

*Corus Group PLC v. Bush*,
    217 F. Supp. 2d 1347 (Ct. Int'l Trade 2002) .......................................10

*Corus Grp. PLC v. Int'l. Trade Comm'n*,
    352 F.3d 1351 (Fed. Cir. 2003)........................................................7, 9, 10

*Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
    234 F.R.D. 4 (D.D.C. 2006)....................................................................12

*In re Fannie Mae Derivative Litig.*,
    227 F.R.D. 142 (D.D.C. 2005)................................................................12

*H & H Wholesale Servs. v. United States*,
    437 F. Supp. 2d 1335 (Ct. Int'l Trade 2006) .......................................11

*Hickman v. Taylor*,
    329 U.S. 495 (1947)..........................................................................5, 10

*Isaac v. Shell Oil Co.*,
    83 F.R.D. 428 (E.D. Mich. 1979) ...........................................................5

*Maple Leaf Fish Co. v. United States*,
    762 F.2d 86 (Fed. Cir. 1985)....................................................................8

*Meyer Corp. U.S. v. United States*,
    2016 Ct. Intl. Trade LEXIS 18 (2016) ....................................................7

*Motion Sys. Corp. v. Bush*,
    437 F.3d 1356 (Fed. Cir. 2006) (en banc)...............................................7

*Nat'l Wildlife Federation v. U.S. Forest Service*,
    861 F.2d 1114 (9th Cir. 1988) .................................................................7

*New York v. Mountain Tobacco Co.*,
    953 F. Supp. 2d 385 (E.D.N.Y. 2013) ...................................................................12

*OMG Fidelity, Inc. v. Sirius Tech., Inc.*,
    239 F.R.D. 300 (N.D.N.Y. 2006) .......................................................................12

*Sellick Equip. Ltd. v. United States*,
    18 C.I.T. 352 (1994) .............................................................................................5

*Silfab Solar, Inc. v. United States*,
    892 F.3d 1340 (Fed. Cir. 2018)....................................................................7, 8, 9

*Transpacific Steel LLC v. United States*,
    466 F. Supp. 3d 1246 (Ct. Int'l Trade July 14, 2020)......................................8, 9

*United States v. George S. Bush & Co.*,
    310 U.S. 371 (1940).......................................................................................8, 9

*United States v. Optrex America, Inc.*,
    2004 WL 1490419 (Ct. Int'l Trade 2004).......................................................5, 10

*United States v. Optrex American, Inc.*,
    28 C.I.T. 1231 (2004) ..........................................................................................7

**Statutes**

19 U.S.C. § 1862........................................................................................................9

19 U.S.C. § 2253.................................................................................................2, 3, 6

19 U.S.C. § 2254 (b)(1) ....................................................................................1, 1, 10, 13

19 U.S.C. § 2254(b)(1)(B) .................................................................................3, 4, 6, 9

**Other Authorities**

85 Fed. Reg. 65,639 (Oct. 16, 2020)................................................................. *passim*

## MOTION FOR EXPEDITED DISCOVERY
## TO COMPEL PRODUCTION OF PETITION

Pursuant to USCIT Rules 1, 26, 34, 36, and 37, Plaintiffs the Solar Energy Industries Association ("SEIA"), NextEra Energy, Inc. ("NextEra"), Invenergy Renewables LLC ("Invenergy"), and EDF Renewables, Inc. ("EDF-R") move the Court to compel Defendants the United States et al. to produce, on an expedited basis, the "petition from a majority of the representatives of the domestic industry" (the "Petition") upon which President Trump supposedly based Presidential Proclamation 10101,[1] the subject of this suit. As discussed further below, ascertaining the existence of that Petition—a statutory predicate under Section 204(b)(1) of the 1974 Trade Act—is necessary to enable the Plaintiffs to fully respond to, and the Court to resolve, the pending Motion to Dismiss (ECF No. 17).

On March 8, 2021, Plaintiffs emailed Department of Justice counsel for Defendants, Mr. Stephen Tosini, a Request for Production of the Petition, asking the Government to respond by March 12, 2021. *See* Attach. A. On March 12, 2021, Mr. Tosini requested additional time to respond. On March 15, 2021, Mr. Tosini responded by letter, stating that the Government would not produce the Petition because, in the Government's view, it is "wholly irrelevant" to the resolution of the case and "not discoverable." *See* Attach. B (letter from S. Tosini to A. Berman). Because Plaintiffs' response to the Motion to Dismiss is currently due April 2, 2021, Plaintiffs respectfully request that the Court order the Government to respond to this Motion on an expedited basis, and to compel the production of the Petition no later than March 26, 2021.

---

[1] *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020) ("Modification Proclamation").

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

## INTRODUCTION

Plaintiffs respectfully ask the Court to order the Government to produce, no later than March 26, 2021, the claimed Petition upon which the Modification Proclamation is based. The Petition is essential to the resolution of Defendants' Motion to Dismiss, in which the Government argues that Plaintiffs' case fails as a matter of law because President Trump complied with Section 204(b)(1) of the 1974 Trade Act by issuing the Modification Proclamation after receiving a petition from the majority of the representatives of the domestic industry. Ascertaining the existence—or lack thereof—of this Petition will help the Court resolve at least one of the claims in Plaintiffs' Complaint. Conversely, producing the Petition will impose little burden on the Government, given that Plaintiffs ask for but one document, which is of central relevance to their challenge to the Modification Proclamation and the Motion to Dismiss.

Plaintiffs challenge whether the President met the statutory requirements of the Trade Act. Defendants assert those requirements have been met—and therefore the case must be dismissed—because the President received a petition requesting modification of the safeguard measure from a majority of the representatives of the domestic industry. Yet they argue that Plaintiffs and this Court are foreclosed from ascertaining whether a Petition was in fact received and, if so, whether it was from a majority of the representatives of the domestic industry. As discussed below, however, Plaintiffs and this Court have the right to see the Petition so that they may determine whether the President complied with Section 204(b)(1). And contrary to Defendants' assertion, this request has nothing to do with the substantive grounds for the President's decision to issue the Proclamation, or his judgment in doing so. Rather, Plaintiffs seek only to determine whether the statutory predicate for modification of the safeguard measure—the receipt of a petition from a majority of the representatives of the domestic industry—was met.

The Government should not be permitted to refuse to produce the Petition—particularly since it relies on the Petition throughout its Motion to Dismiss, arguing that the Court must dismiss for failure to state a claim precisely *because* the President complied with the statute by receiving a petition from a majority of the domestic industry before issuing the Modification Proclamation. Because the Petition is both directly related to a central legal issue in this case (whether the President complied with Section 204 of the Trade Act) and key to the resolution of the Motion to Dismiss, the Court should order the Government to produce the Petition forthwith.

## FACTUAL BACKGROUND

Plaintiffs brought this action to challenge the Modification Proclamation, which was signed by President Trump on October 10, 2020, and modified the safeguard measure on crystalline silicon photovoltaic ("CSPV") products.

The Modification Proclamation—the Government's third attempt to withdraw the bifacial CSPV module Exclusion that had previously been granted by the U.S. Trade Representative ("USTR")[2]—had three primary effects. First, the Modification Proclamation re-imposed Section 201 safeguard duties on bifacial modules. *Id*. at 65,640, 65,642. Second, the Modification Proclamation increased Section 201 safeguard tariffs on imported CSPV products (including but not limited to bifacial panels) from 15% to 18% in year four of the safeguard measure (February 7, 2021 through February 6, 2022). Third, the Proclamation modified the HTS to reflect the re-imposition of Section 201 safeguard duties on bifacial CSPV modules and the increase in the Section 201 duty rate for year four of the CSPV safeguard measure. *Id*. at 65,640-42.

---

[2] As the Court is aware, Proclamation 10101 was issued after USTR twice tried to withdraw the Exclusion without following proper administrative process, and thus was enjoined from doing so by this Court. The Modification Proclamation is just as unlawful as the Trump Administration's prior attempts to withdraw the bifacial module exclusion, albeit for a different set of reasons, as Plaintiffs will explain in response to the Government's Motion to Dismiss.

As authority for the action taken in the Modification Proclamation, the President cited Section 204(b)(1)(B) of the Trade Act of 1974, 19 U.S.C. § 2254(b)(1)(B), which states:

**(b) Reduction, modification, and termination of action**

**(1)** Action taken under section 2253 of this title may be reduced, modified, or terminated by the President (but not before the President receives the report required under subsection (a)(2)(A)) if the President—

**(B)** determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification, or termination on such basis, that the domestic industry has made a positive adjustment to import competition.

This statute allows the President to reduce, modify, or terminate Section 201 safeguard measures if he "determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification, or termination on such basis, that the domestic industry has made a positive adjustment to import competition." President Trump claimed in the Proclamation that he had received a petition from the domestic industry, and he found that the domestic industry "has begun to make positive adjustments to import competition." 85 Fed. Reg. at 65,640; Compl. ¶47. The President did not publish the Petition with the Proclamation or otherwise make it available, and Plaintiffs are not aware of any petition having actually been submitted to the President by members of the domestic industry. Thus, in their Complaint, Plaintiffs alleged, on information and belief, that no such petition that complied with the statutory requirements was received by the President. *See* Compl. ¶ 61.

The Government relies on the Petition throughout its recently filed Motion to Dismiss, including in its facts, summary of argument, and discussion. Defendants assert:

"After taking into account the ITC's reports, '*receiving a petition from a majority of the representatives of the domestic industry*,' and finding that 'that the domestic industry has begun to make positive adjustment to import competition,' the President decided to revoke the bifacial exclusion." Motion to Dismiss at 9 (quoting Modification Proclamation) (emphasis added).

"Second, after taking into account the ITC's reports, *receiving a petition from a majority of the representatives of the domestic industry*, and concluding that that the domestic industry has begun to make positive adjustment to import competition, the President decided to modify the safeguard measure on solar products by revoking the bifacial exclusion. The President followed the law and, thus, the Court should dismiss the complaint for failure to state a claim; specifically, the complaint fails to set forth a plausible showing that the President's determination involves a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." Motion to Dismiss at 10 (emphasis added).

"[T]he Court's inquiry to ensure compliance with the statute is satisfied by the statement of the President that *he received a petition from 'a majority of the representatives of the domestic industry* with respect to [the relevant modification].'" Motion to Dismiss at 18 (quoting Proclamation 10101, 85 Fed. Reg. 65,640 ¶ 9) (emphasis added).

Despite these many references to and overt reliance on the Petition, the Government has notably declined to confirm that the Petition in fact exists, instead insisting that neither Plaintiffs nor the Court may look "behind" President Trump's statement to that effect in the Modification Proclamation. *See id* at 17; *see also* Ex. B (letter denying request to produce Petition). But the President is not a king, whose word that he complied with the law must be taken as truth. As discussed below, Plaintiffs are not looking "behind" the Modification Proclamation. If there is no petition from a majority of the representatives of the domestic industry, then the President's action cannot be upheld—at least not under Section 204(b)(1)(B) of the Trade Act.

## LEGAL STANDARDS

Under USCIT Rule 26(b), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering (inter alia) the importance of the issues at stake, the parties' access to relevant information, the importance of discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit. USCIT Rule 26(b) also provides that information need not be admissible in evidence to be discoverable.

The Supreme Court has long recognized that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). This Court, in *United States v. Optrex America, Inc.*, 2004 WL 1490419, at *1 (Ct. Int'l Trade 2004), similarly recognized that discovery serves important purposes that include "narrow[ing] the issues" and "secur[ing] information as to the existence of evidence that may be used at trial." It accordingly has broad "discretion in deciding the proper scope and use" of discovery. *Sellick Equip. Ltd. v. United States*, 18 C.I.T. 352 (1994).

When ruling on a motion to compel discovery, courts will balance "the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party." *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 518 (M.D.N.C. 1989). If the information sought is directly related to a central issue in the case, the need for discovery outweighs the associated burdens. *See Alexander v. Parsons*, 75 F.R.D. 536, 539 (W.D. Mich. 1977); *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D. Mich. 1979).

## ARGUMENT

## I. PRODUCTION OF THE PETITION IS ESSENTIAL TO THE RESOLUTION OF THE GOVERNMENT'S MOTION TO DISMISS AND THIS CASE.

Plaintiffs respectfully request that the Court allow expedited discovery and order production of a single document that is integral to the resolution of this case: the Petition. Plaintiffs and the Court should be able to view the Petition because it is *the* document that was the alleged basis for the Modification Proclamation. *See* 85 Fed. Reg. at 65,640 ¶ 9. Moreover, the idea that the President is unaccountable, and that his statements that the statutory prerequisites to exercising his Congressionally-delegated authority have been met are unreviewable, is not in keeping with the separation of powers or the case law on Presidential authority. Defendants' claim that we must accept the President's word that the Petition exists, without allowing the Court to verify that

fundamental fact, is incompatible with both the statutory scheme of the 1974 Trade Act in particular and, indeed, with our system of limited government in general.

Determining whether the Petition exists is critical to the resolution of Plaintiffs' claim that the Modification Proclamation violates Section 204 of the 1974 Trade Act. It is also critical to Plaintiffs' ability to defend against the Government's Motion to Dismiss, given the centrality of the Petition's existence to that Motion. As authority for the action taken in the Modification Proclamation, the President cited Section 204(b)(1)(B) of the Trade Act of 1974, 19 U.S.C. § 2254(b)(1)(B), which allows the President to reduce, modify, or terminate Section 201 safeguard measures if he "determines, after a majority of the representatives of the domestic industry submits to the President a petition requesting such reduction, modification or termination on such basis, that the domestic industry has made a positive adjustment to import competition." The President then stated that he had received such a petition from the domestic industry. 85 Fed. Reg. at 65,640. Defendants now assert in their Motion to Dismiss that "[t]he President followed the law and, thus, the Court should dismiss the complaint for failure to state a claim." Mot. to Dismiss at 10. But if a majority of the domestic industry did not, in fact, submit a petition requesting that the President withdraw the Exclusion and adjust the safeguard duty rate in year four of the safeguard measure, then the President's actions were not authorized by Section 204(b)(1)(B), the Modification Proclamation is contrary to law, and this case should soon be over.

Plaintiffs are not asking the Court to decide, at this time, whether the Petition is sufficient based on any particular form it might take or assess its content;[3] they are simply asking the Court

---

[3] To be sure, the form of the Petition is relevant to the question of whether the President complied with the statute. If the supposed "petition" on which the President based the Modification Proclamation was, for instance, a phone call from one domestic manufacturer, then the President's action would not comply with the statutory requirement that he have received a "petition submitted by a majority of the representatives of the domestic industry." But any such

to require the Government to produce the Petition so that all of the parties and the Court know the relevant facts when briefing and deciding the Motion to Dismiss. Given that Defendants argue that the Modification Proclamation is lawful *because* it is based on a petition from a majority of domestic industry, it is critical to Plaintiffs' ability to respond to the Motion that the Government produce the alleged Petition.

The Government's assertion that *Silfab Solar, Inc. v. United States*, 892 F.3d 1340 (Fed. Cir. 2018), makes the Petition both "not relevant" and "not discoverable" (*see* Ex. B) is a significant mischaracterization of that decision.[4] *Silfab* and other cases addressing the lawfulness of Presidential actions explain that, while courts may not second-guess a *subjective factual determination* made by the President after reviewing information presented to him, courts can determine whether the President complied with the governing statute when making that determination, including by meeting any statutory prerequisites for taking action. *See id.* at 1346 (courts may set aside Presidential action if the President "acts beyond his statutory authority"); *Corus Grp. PLC v. Int'l. Trade Comm'n*, 352 F.3d 1351, 1356 (Fed. Cir. 2003) (review is available to determine whether the President "misconstru[ed]" his statutory authority); *Motion Sys. Corp. v.*

---

issues can be briefed and decided either in the context of the Motion to Dismiss or a subsequent motion for judgment—once all parties know whether the Petition exists, and what it looks like.

[4] Notably, the Government has not asserted that the Petition is privileged. In order to justify withholding a document, the Government has the burden to demonstrate that a privilege precludes its production. *Meyer Corp. U.S. v. United States*, 2016 Ct. Intl. Trade LEXIS 18 (2016) (citing *Nat'l Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1116-17 (9th Cir. 1988)). Even if the Government were to claim, for example, the deliberative process privilege, such a claim "may be defeated by a showing of evidentiary need by a plaintiff that outweighs the harm that disclosure of such information may cause to the defendant." *Id*.; *see also United States v. Optrex American, Inc.*, 28 C.I.T. 1231, 1234 (2004) (When deciding a party's motion to access normally privileged government documents and information, courts weigh the need for secrecy against the need for discovery). Here, the Court's need to review the Petition so that it can determine whether the President complied with the statute is strong, and the Government has not identified any harm that would result from disclosing the Petition.

*Bush*, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc) (courts may consider whether "the President has violated an explicit statutory mandate"); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985) (a court may "interpose" where there is "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority").

In *Silfab*, several Canadian solar manufacturers and a U.S. importer challenged the President's determination that Canadian imports "contribute importantly" to serious injury to the domestic industry and accounted for a "substantial share" of solar imports, but the Court refused to "look behind that determination to see if it is supported by the record," and therefore declined to issue injunctive relief. *Id*. at 1343-44, 49. The Court of Appeals for the Federal Circuit upheld that denial, explaining: "[W]e [do not] have authority to review the President's substantial share determination. The question regarding substantial share is factual, and we have no authority to review the President's factual determinations." *Id*.; *see also United States v. George S. Bush & Co.*, 310 U.S. 371, 379-80 (1940) (rebuffing challenge to Presidential change in duty rates and explaining that "the judgment of the President that on the facts, adduced in pursuance of the procedure prescribed by Congress, a change of rate is necessary is no more subject to judicial review under this statutory scheme than if Congress itself had exercised that judgment."). Here, Plaintiffs do not ask the Court to second-guess the President's "judgment . . . on the facts" (*George S. Bush*, 310 U.S. at 379) or his "motivations" (*Silfab*, 892 F.3d at 1349), but simply to confirm whether the President complied with a statutory prerequisite for making a judgment and taking action: the receipt of a petition from a majority of the representatives of the domestic industry. That is a critical difference. As noted above, *Silfab* itself reconfirmed that a President's actions may be set aside "if the President acts beyond his statutory authority." 892 F.3d at 1346.

That is exactly what this Court did in *Transpacific Steel LLC v. United States*, 466 F. Supp. 3d 1246 (Ct. Int'l Trade July 14, 2020), where it found a Presidential Proclamation imposing a

national security tariff to be unlawful because the President failed to follow the statutory procedures set forth in Section 232 of the Trade Act, and thereby acted beyond his Congressionally delegated authority. The Court found the President's imposition of a 50% tariff on Turkey to be unlawful because, among other things, rather than acting pursuant to a report from the Commerce Department on steel imports from Turkey, the President based his decision to impose the 50% tariff on "informal discussions between the President and the Secretary." *Id.* at 1254-55. The Court explained: "The President is not authorized to act under Section 232 based on any off-handed suggestion by the Secretary; the statute requires a formal investigation and report." *Id.* at 1255. Given the court's emphasis on the need to show compliance with the specific requirements of the statute, the result no doubt would have been the same had the President asserted that he relied upon a Commerce Department report that did not in fact exist.

Here, the statute requires that, before modifying a safeguard measure, the President must *first* receive a petition from a majority of the domestic industry asking him to do so. *See* 19 U.S.C. § 2254(b)(1)(B) (authorizing modification if the President "determines, *after a majority of the representatives of the domestic industry submits to the President a petition* requesting such . . . that the domestic industry has made a positive adjustment to import competition") (emphasis added). The statute does not, as Defendants assert in their letter (Ex. B), authorize the President to make a finding as to *whether* such a petition from a majority of the domestic industry exists. If the President could merely state that he "found" that he had complied with the law, and courts were required to accept that "finding" without any independent inquiry, that would eviscerate the assurance in *Silfab, George S. Bush*, and the other cases cited above that courts may ensure that the President has acted within the bounds of his statutory authority.

The Federal Circuit's decision in *Corus Group PLC v. Int'l Trade Comm'n,* 352 F.3d 1351 (Fed. Cir. 2003), likewise confirms that the courts can decide whether the President's issuance of

a proclamation complied with the governing statute. *Corus* involved a challenge to a proclamation imposing a duty on steel products, which plaintiffs objected to insofar as it also covered tin mill products. *Id*. at 1356. The Court of International Trade granted summary judgment for the government, rejecting Plaintiffs' arguments that the ITC determination on which the President's action was predicated was deficient. *Corus Group PLC v. Bush*, 217 F. Supp. 2d 1347 (Ct. Int'l Trade 2002). In affirming that decision, however, the Federal Circuit reconfirmed that a court may "interpose" in regard to a Presidential action where there is "*a clear misconstruction of the governing statutes, a significant procedural violation, or an action outside delegated authority*." *Id*. at 1356 (emphasis added). All three things might well be present here.

The Federal Circuit also drew a line in *Corus* between the statutory prerequisite for the Presidential action at issue in that case (the ITC determination), and the President's action based on that determination, noting: "[T]he President *may not take action unless the Commission makes an affirmative injury determination*, [but] once such a determination is made, the President has broad latitude to determine the type of action to take." 352 F.3d at 1354 (emphasis added). Here, the President may not act under Section 204(b)(1) unless he first receives a petition from a majority of the domestic industry. This Court has every right to determine whether that statutory prerequisite has been met, and the President is not empowered to deprive the Court of this right simply by saying: not to worry, I complied.

The existence—or lack thereof—of the Petition is thus not only a "relevant fact" in this case, but *a critical inquiry,* the "mutual knowledge" of which is "essential to [the] proper litigation" of this case. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). And knowing now whether the Petition actually exists could meaningfully "narrow the issues" before this Court by allowing it to quickly determine whether the Modification Proclamation complied with the statute in that regard. *See Optrex America, Inc.*, 2004 WL 1490419 at *1.

But in any event, production of the Petition is critical to the resolution of the Government's Motion to Dismiss, which is predicated on the President's compliance with the statute and the presumed existence of the Petition. The Government argues that the Court must dismiss Plaintiffs' suit *precisely because* the President based the Modification Proclamation on a "petition from a majority of the domestic industry." Mot. to Dismiss at 10. It asserts that the Court must simply credit President Trump's statement that he received the Petition; that the President complied with the statute because he said he complied; and, therefore, both discovery of the Petition and judicial review of whether the President followed the statute are unavailable.

If that were the law, then executive action is beyond the scope of judicial review. But that is not the law; rather, the case law discussed above confirms that courts have an important role to play in determining whether the President complied with the statutory requirements and did not exceed his Congressionally delegated authority. To fulfill that important judicial function, both the Court and Plaintiffs must be able to see whether the Petition on which the President claims to have based the Modification Proclamation exists.

## II. EXPEDITED DISCOVERY OF THE PETITION IS WARRANTED.

While normally discovery commences after a USCIT Rule 16 scheduling conference and the issuance of a case management order, the unique circumstances in this matter warrant early discovery and expedited production of the Petition. This is a very limited and specific discovery request, and it gets straight to the heart of Plaintiffs' challenge to the Modification Proclamation as inconsistent with the Trade Act. There is accordingly good cause to compel production of the Petition in the near term—before Plaintiffs must respond to the pending Motion to Dismiss.

For guidance in determining whether early discovery should be permitted, this Court may look to the standards applied under the Federal Rules of Civil Procedure. *See H & H Wholesale Servs. v. United States*, 437 F. Supp. 2d 1335, 1349 (Ct. Int'l Trade 2006). Under those rules, the

federal courts grant motions for early discovery using a reasonableness and good cause test, which looks to the entirety of the record and the surrounding circumstances. *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). Factors commonly considered include, but are not limited to: the breadth of the discovery requests; the purpose for requesting the expedited discovery; and the burden on the defendants to comply with the requests. *Id.* (citing *In re Fannie Mae Derivative Litig.,* 227 F.R.D. 142, 143 (D.D.C. 2005)).

Here, the discovery request is very limited in scope: one document (the Petition) and any attachments thereto. The Government can hardly assert that it would be unduly burdensome for it to produce this one document. This very limited discovery would not be burdensome to Defendants, and should be readily available (assuming it exists).

Furthermore, the purpose of this limited discovery request is to enable the Plaintiffs to fully respond to the Government's Motion to Dismiss, making production of the Petition at this stage of the litigation both reasonable and necessary. Plaintiffs' response is currently due in two weeks, on April 2. These are precisely the sort of circumstances in which courts have granted requests for expedited or early discovery. *See OMG Fidelity, Inc. v. Sirius Tech., Inc.*, 239 F.R.D. 300 (N.D.N.Y. 2006) (granting request for expedited discovery because the burden of production would not be great, and plaintiff would be prejudiced in preparing its motion for a preliminary injunction if discovery were not permitted); *Ayyash v. Bank Al—Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) (granting plaintiff's request for expedited discovery to locate foreign defendant's assets because good cause was established by showing that defendants had both incentive and capacity to hide their assets); *New York v. Mountain Tobacco Co.*, 953 F. Supp. 2d 385 (E.D.N.Y. 2013) (finding that the state's request for expedited discovery of documents concerning cigarette sales was reasonable because it was narrowly tailored to a limited period).

Production of the Petition—or the admission that it does not in fact exist—will position the Court to quickly resolve one of the key issues raised in this case: whether the Modification Proclamation complies with the procedural requirements of Section 204(b)(1) of the Trade Act. The Court should accordingly compel the Government to either produce the Petition forthwith, or inform the Court and the Plaintiffs that no such Petition exists.

## CONCLUSION

For these reasons, we request that the Court grant our Motion and require the Government to produce the Petition or admit that it does not exist no later than March 26, 2021.

Respectfully Submitted,


/s/ Matthew R. Nicely
Matthew R. Nicely
James E. Tysse
Daniel M. Witkowski
Devin S. Sikes
Julia K. Eppard
AKIN GUMP STRAUSS HAUER &
FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4000
mnicely@akingump.com

*Counsel to SEIA and NextEra Energy, Inc.*

Amanda Shafer Berman
John Brew
Larry Eisenstat
Amanda Shafer Berman
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 624-2500
aberman@crowell.com

/s/ Frances Hadfield
CROWELL & MORING LLP
590 Madison Ave, 20th Floor

New York, NY 10022
(212) 803-4040

Counsel to Invenergy Renewables, LLC

/s/ Kevin O'Brien
Kevin M. O'Brien
Christine M. Streatfeild
BAKER & MCKENZIE LLP
815 Connecticut Ave, NW
Washington, DC 20006
(202) 452-7000
kevin.obrien@bakermckenzie.com

Counsel for EDF Renewables, Inc.

## CERTIFICATE OF COMPLIANCE

I, Frances Hadfield, at Crowell & Moring LLP, who is responsible for the foregoing motion, relying upon the word count feature of the word processing program used to prepare the motion, certify that it contains 4,652 words.

/s/  Frances Hadfield
March 19, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March 2021, that I served a true copy of the foregoing in Court No. 20-3941 through the Court's electronic filing system.

/s/  Frances Hadfield

Attachment A

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SOLAR ENERGY INDUSTRIES ASSOCIATION, NEXTERA ENERGY, INC., INVENERGY RENEWABLES, LLC, and EDF RENEWABLES, INC.,<br><br>               Plaintiffs,<br><br>   v.<br><br>UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, and MARK A. MORGAN, in his official capacity as Acting Commissioner of United States Customs and Border Protection,<br><br>               Defendants. | Court No. 20-03941<br><br>REQUEST FOR EXPEDITED PRODUCTION OF DOCUMENTS |

### Request for Expedited Production of Documents

Pursuant to C.I.T. Rules 26(d)(2) and 34, Plaintiffs hereby serve the following Request for the Expedited Production of Documents:

1. Produce the "petition from a majority of the representatives of the domestic industry" referenced in Presidential Proclamation 10101, *To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639 (Oct. 16, 2020), including all attachments to, or documents submitted in support of, that petition.

Given the clear relevance of the document(s) identified above to Defendants' pending motion to dismiss this case, please produce an electronic copy of the document(s) identified above to Plaintiffs, via email to the undersigned counsel, <u>on or before March 12, 2021</u>. If production is not forthcoming within that period, Plaintiffs intend to move for expedited discovery and to compel production of the document(s) described above.

March 8, 2021

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
James E. Tysse
Daniel M. Witkowski
Devin S. Sikes
Julia K. Eppard
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4000
mnicely@akingump.com

*Counsel to SEIA and NextEra Energy, Inc.*

/s/ Amanda Shafer Berman
John Brew
Larry Eisenstat
Amanda Shafer Berman
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 624-2500
aberman@crowell.com

Frances Hadfield
**CROWELL & MORING LLP**
590 Madison Ave, 20th Floor
New York, NY 10022
(212) 803-4040

*Counsel to Invenergy Renewables, LLC*

/s/ Kevin O'Brien
Kevin M. O'Brien
Christine M. Streatfeild
**BAKER & MCKENZIE LLP**
815 Connecticut Ave, NW
Washington, DC 20006
(202) 452-7000
kevin.obrien@bakermckenzie.com

*Counsel for EDF Renewables, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 8, 2021, I served the foregoing request for the expedited production of documents on counsel for the federal Defendants via the email address listed for government counsel on CM-ECF, and previously used for correspondence between the parties.

/s/ Amanda Shafer Berman
Amanda Shafer Berman
*Counsel for Plaintiff Invenergy Renewables, LLC*

Attachment B



**U.S. Department of Justice**

Civil Division

JED/TKH/SCTosini
54-20-3941

_____

*Washington, DC 20530*

March 15, 2021

By Electronic Delivery

Amanda Shafer Berman, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004

    re:    *Solar Energy Industry Assoc. v. United States.*, No. 20-03941 (Ct. Int'l Trade)

Dear Amanda:

    I am writing in response to plaintiffs' request for discovery of March 8, 2021. In their request, plaintiffs seek certain documents relied upon by the President when he issued *Proclamation 10101: To Further Facilitate Positive Adjustment to Competition From Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully Assembled Into Other Products)*, 85 Fed. Reg. 65,639, 65,640 (Oct. 16, 2020). Because the President's findings of fact and motivations for his actions are not subject to review, the requested documents are not discoverable under any theory.

    In challenges to *Presidential* action, "'[t]he President's findings of fact and the motivations for his action are not subject to review.'" *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1349 (Fed. Cir. 2018) (quoting *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 88 (Fed. Cir. 1985)). As a result, "'the judgment of the President . . . on the facts . . . is no more subject to judicial review . . . than if Congress itself had exercised that judgment.'" *Id.* (quoting *United States v. George S. Bush & Co.*, 310 U.S. 371, 379-80 (1940)). Given the scope and standard of review for Presidential action, the requested documents are wholly irrelevant. Accordingly, they would not be discoverable as "relevant" under Rule 26(b)(1), or any other theory.

If you have any further questions or concerns, please contact me at stephen.tosini@usdoj.gov.

Yours truly,

/s/ *Stephen C. Tosini*

STEPHEN C. TOSINI
Senior Trial Counsel
Commercial Litigation Branch

cc: Matthew R. Nicely, Esq.
Kevin M. O'Brien, Esq.