**Solar Energy Industries Association, et al. v. United States, et al., 20-03941**
**Additional Questions for Oral Argument, 7/13/2021**

**Additional Questions to Plaintiffs Solar Energy Industries Association ("SEIA"), Nextera Energy, Inc. ("Nextera"), Invenergy Renewables LLC ("Invenergy"), and EDF Renewables, Inc. ("EDF-R") (collectively, "Plaintiffs"):**

1. Plaintiffs argue that only trade-liberalizing modifications are permitted under Section 204(b)(1)(B). E.g., Compl. at 7, Dec. 29, 2020, ECF No. 2 ("Compl."). Under what circumstances would the domestic industry, even if it has positively adjusted to import competition, choose to request trade-liberalizing modifications?

2. The parties dispute whether Plaintiffs request an inquiry into procedural compliance with Section 204(b)(1)(B), Pls.' Resp. to Defs.' Mot. to Dismiss and Cross-Mot. for Summ. J. at 13–14, May 7, 2021, ECF No. 28, or a review of presidential fact-finding, Defs.' Reply in Supp. of their Mot. to Dismiss and Resp. to Pls.' Mot. for Summ. J. at 10–12, June 11, 2021, ECF No. 29. Defendants argue that even if the court finds that this is an inquiry into procedural compliance, "the Court should defer to the President's construction of these procedures" because "Congress entrusted the President to administer section 204, 19 U.S.C. § 2254." Defs.' Resp. to Court's Questions at 2, July 9, 2021, ECF No. 35. Do you agree? If not, why not?

3. Is it possible that a temporary increase in safeguard measures could, as with safeguards generally, ultimately serve a trade-liberalizing purpose by allowing domestic industry to effectively adapt to the practical effects of a specific safeguard? For example, would it be possible for representatives of domestic industry to determine that safeguard measures have had a generally positive effect on domestic adaptation to competition, but that full adaptation is not possible without increased safeguards?

4. Even if Plaintiffs are correct that the petition failed to fully comply with the requirements of the statute, are flaws in the petition sufficient basis to invalidate Proclamation 10101 despite the Federal Circuit's treatment of procedural defects occurring prior to Presidential action in Silfab Solar, Inc. v. United States, 892 F.3d 1346 (Fed. Cir. 2018)?

**Additional Questions to Defendants the United States, et al. ("Government"):**

1. Section 204 requires that "a majority of the representatives of the domestic industry submit[] to the President a petition requesting such reduction, modification, or termination . . . ." 19 U.S.C. § 2254(b)(1)(B). Even if the court accepts Defendants' proposed definition of "a majority," why are petitions submitted to the USTR rather than to the President, as these were[1], not in conflict with the statute?

2. Defendants argue that in the phrase "on such basis" in Section 204(b)(1)(B) that "[t]he adjective 'such' refers back to something indicated earlier in the text," rather than the

---

[1] See ECF No. 23, Attachment A ("LGEUS Letter"); ECF No. 23, Attachment B ("Hanwha/Auxin Letter"); ECF No. 23 Attachment C ("Auxin/SolarTech/Mission Solar Energy Letter").

phrase "positive adjustment to import competition" that comes after. Defs.' Reply at 21–22. What, in your view, is the referent of "such" in Section 204(b)(1)(B)?

3. What circumstances would constitute adequate basis for increased tariffs under Section 204(b)(1)(B) but not "changed economic circumstances" under Section 204(b)(1)(A)(ii)? Given that Section 204(b)(1)(A) does not provide for modification of safeguard measures based on changed economic circumstances, why doesn't the Government's view of Section 204(b)(1)(B), as laid out in its response to question three of the oral argument questions, undermine this clear limitation?

4. Assuming the three letters submitted to USTR constitute a petition, why would submission of such petition to USTR satisfy the statute's prerequisite of the submission of a petition to the President?