IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SOLAR ENERGY INDUSTRIES ASSOC., *et al.*,<br>          Plaintiffs,<br><br>                    v.<br><br>UNITED STATES, *et al.*,<br>          Defendants. | Court No. 20-3941 |

**DEFENDANTS' SUPPLEMENTAL BRIEF RE *TRANSPACIFIC***

Defendants respectfully submit this supplemental brief regarding *Transpacific Steel LLC v. United States*, No. 2020-2157, 2021 WL 2932512 (Fed. Cir. July 13, 2021). In *Transpacific*, the majority held that 19 U.S.C. § 1862(c)(1) permits the "President to announce a continuing course of action within the statutory time period and then modify the initial implementing steps in line with the announced plan of action by adding impositions on imports to achieve the stated implementation objective." The majority based its conclusion on three relevant holdings. First, it affirmed that the statutory directive "shall . . . take action" within a certain amount of time, standing alone, did not divest the President of power to act after expiration of that time period. *Id*. *10-11. Second, it held that statutory authority to "take action" "can readily be used to refer to a process or launch of a series of steps over time." *Id*. *11. And third, the majority considered the statute's "evident purpose" and what was needed to render action mandated by the statute effective. *Id*. *13.

**I.    Section 203's Time Constraints Are Directory**

*Transpacific* reaffirmed the rule that, "[a]s a matter of ordinary meaning, a command to 'take this action by time T' is often, in substance, a compound command—one, a directive (with

conferral of authority) to take the action, and, two, a directive to do so by the prescribed time.  A violation of the temporal obligation imposed by the second directive does not necessarily negate the primary obligation imposed by—let alone the grant of authority implicit in—the first directive." *Id*. *10.  Accordingly "the mere use of the word shall in a statute, standing alone, is not enough to remove the official's power to act after the time deadline." *Id*. (quoting *Brock v. Pierce County*, 476 U.S. 253, 262 (1986)) (internal quotation marks and bracketing omitted).

Here, the statutory language is functionally indistinguishable from section 232.  *Compare* 19 U.S.C. § 1862(c)(a)(A)(ii) ("If the President determines . . . to take action [within 90 days] . . ., the President shall implement that action [within] 15 days"), *with* 19 U.S.C. § 2253(a)(4)(A) ("the President shall take action . . . within 60 days").  The safeguard statute's purpose is to protect "domestic industries from [serious harm by reason of] the lowering of trade barriers as the result of such trade agreements, 'so that the industry will have sufficient time to adjust to the freer international competition.'" *Corus Grp. PLC. v. ITC*., 352 F.3d 1351, 1353 (Fed. Cir. 2003) (quoting S.Rep. No. 93–1298, at 119 (1974)).  In sum, *Transpacific* and the protective purpose of section 201 dispose of any contention that section 203's time limitations preclude later action.

## II.     To "Take Action" Envisions A Continuing Process

*Transpacific* also compels the conclusion that the President may "modify or terminate" (or to "grant") exclusions after the 60-day period for taking "action."  Indeed, any contention that the original bifacial exclusion effected a "termination" for the purposes of the 19 U.S.C. § 2253(e)(7) cooling off period or that modifications must be trade liberalizing cannot stand.  *See* ECF No. 33 at 2-3 (question nos. 2-3, 7).

In *Transpacific*, "[t]he key issue [wa]s whether § 1862(c)(1) permits the President to announce a continuing course of action within the statutory time period and then modify the initial implementing steps in line with the announced plan of action by adding impositions on imports to achieve the stated implementation objective." *Transpacific*, No. 2020-2157, 2021 WL 2932512, at *9. The Federal Circuit "conclude[d] that the President does have such authority in the circumstances presented here," where the information underpinning the President's determination is not "stale." *Id*. *9, *13. It then noted that, "[t]his case involves presidential adherence to the key finding of a need for a certain capacity-utilization level, with no indication of staleness of that finding." *Id*. *13.

Moreover, *Transpacific* supports a conclusion that decisionmakers are not required to reassess the social costs and benefits for each subsequent act modifying the safeguard measure. The statute directs only the President to make that comparison at the outset of a safeguard, as he did for the entire remedy in *Proclamation 9693*, 83 Fed. Reg. 3,541 (Jan. 23, 2018); *see also* 19 U.S.C. § 2253(a)(1)(A). When he weighed the costs and benefits of the continuing course of action that he set forth, the President necessarily weighed future known modifications such as the annual tariff reductions, and future unknown modifications such as exclusions (and revocations of exclusions), action related to excluded countries, or changes related to possible consultations under the Agreement on Safeguards. Accordingly, there was no requirement that any official reweigh those costs with each modification pursuant to the "continuing course of action" originally proclaimed. *Transpacific*, No. 2020-2157, 2021 WL 2932512, at *9.

**III.   The Presumption Of Effectiveness Covers Interpretation Of The President's Authority**

Finally, as in this case, "Transpacific ha[d] suggested that the President's [continuing] authority to act . . . is limited to relaxing impositions." *Id.* *13. The Court rejected this

3

argument as "not supported by the ordinary meaning of the language and conflict[ing] with paragraph (3) of § 1862(c) and § 1862's purpose entrusting the President with the duty to adopt *effective* measures for the threat found by the Secretary." *Id*. (emphasis added).  Indeed, "[t]o prevent the President from increasing the impositions . . . after the initial plan announcement would be to impede the President's ability to be effective in solving the specific problem found by the Secretary." *Id*.  (emphasis added).  Here, the ITC concluded that "that solar products were being imported into the United States in such increased quantities as to be a substantial cause of serious injury to the domestic industry." *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1342–43 (Fed. Cir. 2018) (internal quotation marks omitted).  Similarly, the ITC concluded in USITC Pub. 5032 (Mar. 2020), available at https://www.usitc.gov/publications/other/pub5032.pdf, that that the "exclusion for imports of bifacial modules . . . is likely to have significant effects on prices and trade in both modules and cells." *Id*. at ES-3; *see also id*. at ES-4–5, I-4–5, II-9–10, II-15–18, III-1, III-4–7, D-7–10 (also discussing issues caused by bifacial exclusion).

Given that the cause of the serious injury found by the ITC – increased imports – continued with respect to bifacial products and compounded the serious injury suffered by the domestic industry, *Proclamation 10101* effectively served the purpose of facilitating efforts by the domestic industry to make a positive adjustment to import competition, 19 U.S.C. § 2253(a)(1)(A).  In sum, plaintiffs' contention that any change to the safeguard must be "trade liberalizing" ECF No. 33 at 2-3 (question nos. 5, 7), runs afoul of the command that remedies be effective at facilitating efforts by the domestic industry to make a positive adjustment to import competition.

And for the same reason, defining the majority of the domestic industry representatives by a head-count as opposed to production volume would reduce the effectiveness of the safeguard remedy by allowing unrepresentative, possibly *de minimis*, minorities of an industry to block relief.

For these reasons, and those presented in our briefs and argument, we respectfully request that the Court enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/  TARA K. HOGAN
Assistant Director

/s/  STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-5196

July 20, 2021                                                              Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 1,197 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Stephen C. Tosini