UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SOLAR ENERGY INDUSTRIES ASSOCIATION, NEXTERA ENERGY, INC., INVENERGY RENEWABLES LLC, and EDF RENEWABLES, INC.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES, *ET AL.*,<br><br>　　　　Defendants. | Court No. 20-03941 |

<u>DEFENDANTS' RESPONSE TO COURT'S JANUARY 30, 2025 LETTER</u>

Defendants (collectively, the United States) respectfully submit these responses to the questions posed by the Court in advance of the oral argument scheduled on February 12, 2025, ECF No. 69.

**1.  Are Defendants prepared to make the showing described by Plaintiffs in their brief of November 22, 2024? See Pls.' Br. at 10–11. Would it be proper for the court to condition reliquidation on such a showing?**

Customs & Border Protection (CBP) is prepared to provide explanations to the Court with respect to the inadvertent liquidations.  First, we have already provided to the Court, in general terms, an explanation of the affected entries and the likely reasons why the liquidations occurred in violation of the suspension order.  *See* Def. Response to Court's Letter, ECF No. 65 (Dec. 9, 2024).

Second, CBP can provide a declaration and/or a spreadsheet providing more specific information concerning the entries that were liquidated and an explanation as to how and why CBP liquidated the entries.  CBP is willing to make that showing to the

1

Court, if the Court deems it appropriate to understanding the reasons why the Court's suspension order was violated. Such information, however, necessarily includes business proprietary information of importers. Plaintiffs are not themselves importers of subject merchandise and have no entries that will be directly affected by the judgment. It would not be appropriate to disclose such business confidential information to plaintiffs.

Such a showing is, in any event, not necessary or needed before this Court may enter judgment with instructions to CBP to liquidate or reliquidate entries to comply with Proclamation 10101. The purpose of the order suspending liquidation pending appeal was to ensure that ultimate liquidation of these entries of solar products was in accordance with the final determination of whether Proclamation 10101 was lawful. We have proposed a plan that we believe will achieve that goal.

Specifically, CBP would liquidate or reliquidate as necessary to conform with Proclamation 10101 as upheld by the Federal Circuit. That liquidation or reliquidation is subject to further administrative and judicial review as needed and as appropriate pursuant to the protest mechanism under 19 U.S.C. §§ 1514 and 1515, with opportunity for judicial review as needed in accordance with 28 U.S.C. § 1581(a). By contrast, plaintiffs' approach requires this Court to both fail to enforce the appellate mandate and this Court's suspension of liquidation order.

Finally, we believe that the plaintiffs' request for CBP to identify, in advance of CBP's actual application of Proclamation 10101, "documented proof that the goods in each entry are in fact subject to the safeguard duties as alleged" is both premature and appropriate. CBP intends to administer Proclamation 10101 in a manner consistent with

the proclamation and this Court's judgment. Should an importer disagree with CBP's liquidation of entries, there are remedies available to the importer.

**2. Of what significance to the present controversy, if any, is the fact that no domestic petitioner is a party to this litigation?**

There is no legal or practical significance to the fact that the domestic solar manufacturing industry is not participating in this litigation.

In antidumping or countervailing duty suits, domestic petitioners who participated in the administrative proceeding are statutorily entitled to intervene and, as a practical matter, frequently do, to defend their interests. By contrast, the safeguard statute contains no corresponding right to intervene, nor is there a settled historical practice of doing so.

Instead, the lawfulness of Presidential Proclamation 10101 was vigorously defended in this Court and on appeal by the United States. The President's original purpose in implementing the safeguard measures was to protect the domestic solar manufacturing industry from serious injury or threat of serious injury caused by imports of competitive articles. The actions proclaimed in Proclamation 10101 were taken to ensure the effectiveness of the safeguard action. The goal and benefit of the safeguard measures for the domestic solar manufacturing industry will be finally achieved by issuance of the judgment and resulting liquidation (or reliquidation) of the entries in a manner consistent with Proclamation 10101.

**3. At what point after an inadvertent liquidation would it be improper for the court to entertain the Government's reliquidation request? Are such requests subject to a version of "[t]he rule quod nullum tempus occurrit regi—that the sovereign is exempt from the consequences of its laches . . . ."?** *Guar. Tr. Co. of N.Y. v. United States*, **304 U.S. 126, 132 (1938).**

We acknowledge that there may be some limit to the time after judgment is entered for any party to ask the Court to enforce the judgment. Whatever that time limit,

3

this case is nowhere close to it, because there is not yet final judgment. Here, the injunction itself provided the relevant time frame for ensuring that all subject entries be assessed duties in accordance with the final outcome of this litigation, and the injunction remains in effect until this Court issues its final judgment in accordance with the Federal Circuit's mandate.

To be clear, "{l}iquidations in violation of a valid court order have no legal effect." *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1162, 1167-69 (Ct. Int'l Trade 2004). We consider the inadvertent liquidations to be a legal nullity, because they occurred in contravention of a Court order. In such circumstances, an order directing reliquidation is not required for CBP to place the affected entries back into unliquidated status. Indeed, once CBP discovered the erroneous liquidations, it could have (and technically still could) return the entries to a suspended status. Such actions would be both permissible and necessary to come back into compliance with a court order.

However, because of the fortuity of discovering the errors shortly before what we believed to be imminent entry of judgment back in October, we requested that the Court permit CBP to take specific action, as an administrative and housekeeping matter, and to avoid the unnecessary but significant administrative burden of returning to unliquidated and suspended status entries that were already (inadvertently but ultimately correctly) liquidated consistent with Proclamation 10101, only to then re-do the very same liquidation.

To recall, there are three general categories of entries that will be affected by the judgment.

**First:** Entries whose liquidation remains suspended. This is the largest category of entries. The parties agree that the Court should direct CBP to liquidate those entries.

**Second:** Entries inadvertently liquidated in contravention of the court order, but in accordance with Proclamation 10101. CBP proposed taking no further action on those entries. The alternative would be for CBP to take a series of steps unsetting liquidation and then immediately liquidating at the very same rate. This approach requires a burdensome and manual process that will take CBP a significant amount of time and divert the agency's limited and already stretched resources from other critical aspects of its mission. We proposed this approach as a matter of efficiency and to reduce the possibility of introducing errors. Plaintiffs do not appear to object to this approach.

**Third:** In this, the smallest subset of entries, the entries were liquidated in violation of the Court's order and in a manner contrary to Proclamation 10101 (including entries liquidated at a lower rate than required by Proclamation 10101 as well as entries liquidated at a higher rate than required by Proclamation 10101). Here, we proposed that, rather than having CBP unset liquidation and then liquidate at the correct rate, the Court authorize CBP to simply reliquidate at the correct rate. Again, this approach is proposed for efficiency and reduce potential further error.

In sum, the proper time for us to make this request is now. We are not invoking any special exception to laches as may apply to the sovereign, because we have not delayed, let alone unreasonably delayed, seeking this request.

**4.    Of what importance, if any, is the fact that the instant request for a reliquidation order preceded the entry of judgment? Cf. Home Prods. Int'l, 405 F. Supp. 3d at 1373.**

This fact is important insomuch as CBP is seeking, *in advance of entry of judgment*, the Court's approval of a plan for disposition of the entries, in order to ensure that CBP properly effectuates the judgment upon entry. We are not requesting relief outside of the judgment, or years after the judgment, as in *Cemex*. Rather, we are simply requesting guidance from the Court on the mechanisms available to best ensure that the judgment, once entered, is effectuated. To the extent that "equity aids the vigilant," *Home Products*, 405 F. Supp. 3d at 1374, we have been vigilant.

**5.    In *Target*, another session of this court issued a reliquidation order "consistent with its inherent power as an Article III court and the obligation to enforce its own judgments." 647 F. Supp. 3d at 1375. Please describe the circumstances underlying that order's issuance. Do similar circumstances pertain here?**

In the matter preceding *Target*, various parties and the United States entered a settlement agreement, enforced by a stipulated judgment, to liquidate certain entries of metal-top iron tables at a 72.29% antidumping duty margin. *Home Products, Int'l v. United States*, 405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019). After the Court entered the stipulated judgment, the defendant learned that CBP had "erroneously liquidated 242 entries of subject merchandise" at the original, lower, cash deposit rate. *Target*, 647 F. Supp. 3d at 1375. The United States returned to the Court, requesting an order directing CBP to reliquidate those entries in accordance with the judgment. Exercising its own inherent power as an Article III court to ensure compliance with its own judgments, the Court entered an order directing reliquidation of the affected entries.

The overarching principles apply here to less complicated facts. This Court entered an interlocutory order suspending liquidation of all subject entries pending the Federal Circuit's consideration of whether Proclamation 10101 is lawful. Entries were liquidated in violation of that interlocutory, non-final order. Acknowledging both our error in inadvertently violating the suspension of liquidation order and this Court's duty to effectuate the appellate mandate, we are requesting that the Court enter judgment that will both implement the appellate mandate, as this Court must do, and which will cover the entries that *all parties agreed* were to be finally liquidated in a manner consistent with the appellate mandate. It is well within this Court's authority and power to grant the relief requested.

6. In *Cemex*, the Federal Circuit made the following series of observations:

**[T]his case asks the question of who bears the brunt of monitoring the implementation of antidumping duties. Clearly, where the final assessment rate greatly exceeds the "as entered" rate, the importers will have little, if any, incentive to ensure that the higher rate is applied. That burden must by necessity fall on the other interested parties, here, the domestic producers. 384 F.3d at 1325. Which entities, if any, bore the "brunt of monitoring" in this case? Please address any other elements of this opinion that may be relevant here.**

There are two entities that "bore the brunt of monitoring" the entries affected by Proclamation 10101 and the suspension of liquidation order issued in this case. First, as the entity enjoined by the Court's suspension order, CBP is responsible for implementing, and ensuring compliance, with the order. This monitoring of the entries is what led us to provide the information concerning liquidation of certain entries in our October 29, 2024 letter. *See* ECF No. 59.[1]

---

[1] As a result of similar monitoring, CBP earlier identified a number of entries which had been inadvertently liquidated in violation of the injunction. We notified the Court and the parties of this fact in August 2022. *See* Aug. 11, 2022 Status Report, ECF

Second, and as a general matter, importers of record are responsible for monitoring the status of their own entries. CBP notifies importers of record when entries are liquidated. Had any importer believed that an entry was improperly liquidated at any time since December 7, 2021, when the Court entered the order, the importer could have filed a protest. 19 U.S.C. § 1514. Moreover, should the Court authorize reliquidation of certain entries, those same importers of record will be able to protest the reliquidation, should they believe there are any errors. Judicial review will be available upon disposition of any such protest.

The discussion in *Cemex* concerning who bears the brunt of monitoring is of limited relevance. There, domestic producers (the Ad Hoc Committee) "successfully obtained an increase in the amount of antidumping duties calculated by the Department of Commerce." 384 F.3d at 1315. Judgment was entered in 1998. In 2001, certain entries were finally liquidated, but at a lower rate, contrary to the Commerce instructions implementing the court judgment. *Id*. at 1317. Two years later, the Ad Hoc Committee sought to enforce the judgment with a request that the Court direct liquidation of the entries at the correct final assessment rate. *Id.*

Ultimately, the Federal Circuit held that the Ad Hoc Committee's request to enforce the judgment was untimely. The court observed that Ad Hoc ignored "repeated warning signs" that the judgment was not being complied with, and held that it "should have moved the Court of International Trade to enforce the judgment in 1998, rather than in 2003." *Id*. at 1325.

---

No. 50. CBP took internal steps to return those entries to suspended status, without requiring or requesting additional authority from this Court.

By contrast, the Court specifically directed the parties to report if there were "matters require{ing} the courts attention prior to the entry of judgment."  Court's Oct. 22, 2024 Letter, ECF No. 59.  We promptly responded to the Court's request, identified the relevant matters, and proposed a plan for the terms of the judgment that would best ensure that the appellate mandate was effectuated.  This is a scenario completely dissimilar to the four-year delay in moving to enforce the judgment that was addressed in *Cemex*.

**7. What authorities best support your overall argument?**

- *Home Products Int'l v. United States*, 405 F. Supp. 3d 1368 (Ct. Int'l Trade 2019): Recognizing this Court's inherent power as an Article III court to issue orders as necessary to enforce its judgments and orders.

- *AK Steel v. United States*, 281 F. Supp.2d 1318, 1323 (Ct. Int'l Trade 2003): declaring that liquidations of entries subject to a court injunction against liquidation were "null and void ab initio" and directing their return to suspended status.

- *Alden Leeds Inc. v. United States*, 476 F. Appx 393, 399 n.3 (Fed. Cir. 2012): in a non-precedential opinion, recognizing the distinction between liquidations in violation of a court-ordered suspension of liquidation, which are of no legal effect, and liquidations contrary to agency-ordered suspension of liquidation, for which importers are responsible for monitoring and preserving their remedies.

**8. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?**

No, we are not aware of any recent or pending cases before this Court or the Court of Appeals for the Federal Circuit that may affect the Court's analysis.

                Respectfully Submitted,

                BRETT A. SHUMATE
                Acting Assistant Attorney General

                PATRICIA M. MCCARTHY
                Director

| | |
|---|---|
| | /s/Tara K. Hogan |
| <u>OF COUNSEL:</u> | TARA K. HOGAN |
| | Assistant Director |
| ALEXANDRA KHREBTUKOVA | Commercial Litigation Branch |
| Senior Attorney | Civil Division |
| Office of Chief Counsel | Department of Justice |
| U.S. Customs & Border Protection | P.O. Box 480, Ben Franklin Station |
| | Washington, D.C. 20044 |
| | Tele: (202) 616-2228 |
| | Email: Tara.Hogan@usdoj.gov |
| February 10, 2025 | Attorneys for Defendant |

10