Slip Op. 25-57

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SOLAR ENERGY INDUSTRIES ASSOCIATION; NEXTERA ENERGY, INC.; INVENERGY RENEWABLES LLC; and EDF RENEWABLES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES; UNITED STATES CUSTOMS AND BORDER PROTECTION; and PETE R. FLORES, Acting Commissioner for U.S. Customs and Border Protection, <br><br> Defendants. | Before: Gary S. Katzmann, Judge <br> Court No. 20-03941 |

## OPINION

[ The court denies Defendants' request for reliquidation. ]

Dated: May 8, 2025

Daniel M. Witkowski, Akin, Gump, Strauss, Hauer & Feld, LLP of Washington, D.C., argued for Plaintiffs Solar Energy Industries Association and NextEra Energy, Inc. With him on the briefs was Matthew R. Nicely.

John Brew, Amanda Shafer Berman, and Weronika Bukowski, Crowell & Moring LLP, of Washington, D.C., for Plaintiff Invenergy Renewables LLC.

Christine M. Streatfeild, Baker McKenzie, LLP, of Washington, D.C., for Plaintiff EDF Renewables, Inc.

Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendants the United States, U.S. Customs and Border Protection, and Pete R. Flores, Acting Commissioner for U.S. Customs and Border Protection. On the briefs were Brett A. Shumate, Acting Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel on the briefs was Alexandra Khrebtukova, Senior Attorney, Office of Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

Court No. 20-03941                                                                            Page 2

Katzmann, Judge:    A mandate from the U.S. Court of Appeals for the Federal Circuit

("Federal Circuit") instructs this court to enter judgment for Defendants[1] in this case.    See

Mandate, Oct. 4, 2024, ECF No. 57.    The mandate follows the Federal Circuit's decision that

Presidential Proclamation 10101,[2] which lifted exclusions from safeguard duties on certain

imports of solar panels, is a valid instrument.    See Solar Energy Indus. Ass'n v. United States, 86

F.4th 885, 890 (Fed. Cir. 2023), suppl. on reh'g, 111 F.4th 1349 (Fed. Cir. 2024) (referring to the

imposition of "safeguard" duties under 19 U.S.C. § 2251).

Judgment will enter in accordance with that decision.    This is a circumstance, though,

where "the disposition of a case in the court of appeals . . . require[s] the . . . court to undertake

more significant proceedings."    Exxon Chem. Pats., Inc. v. Lubrizol Corp., 137 F.3d 1475, 1483

(Fed. Cir. 1998).

While litigation proceeded in this matter, first before this court and then before the Federal

Circuit on appeal (and on subsequent rehearing), an order of this court enjoined CBP's

"liquidation"—that is, the "final computation or ascertainment of duties on entries"—of entries of

solar panels that were subject to the contested safeguard duties.    19 C.F.R. § 159.1 (defining

"liquidation"); see also 19 U.S.C. § 1500(c)–(d) (assigning to CBP the responsibility to "fix the

final amount of duty to be paid on . . . merchandise" and then "liquidate the entry . . . of such

---

[1] Defendants (or "the Government") are the United States, U.S. Customs and Border Protection
("CBP") and CBP's Acting Commissioner.    They are represented in this action by the U.S.
Department of Justice.    The current Acting Commissioner for CBP has been automatically
substituted as a party in accordance with USCIT Rule 25(d).

[2] The full title of this instrument is To Further Facilitate Positive Adjustment to Competition from
Imports of Certain Crystalline Silicon Photovoltaic Cells (Whether or Not Partially or Fully
Assembled into Other Products), Proclamation No. 10101, 85 Fed. Reg. 65639 (Oct. 16, 2020)
("Proclamation 10101").

merchandise"); Order, Dec. 7, 2021, ECF No. 47 ("Suspension Order").  Defendants initially

moved for the Suspension Order's issuance in December of 2021, and Plaintiffs[3] did not oppose

that motion.  See Defs.' Mot. for Order Suspending Liquidation, Dec. 6, 2021, ECF No. 46 ("Mot.

to Suspend").

      Perfect compliance did not ensue.  Defendants have twice acknowledged that CBP has

contravened the Suspension Order by liquidating entries of solar panels that are subject to the

safeguard duties that Proclamation 10101 renders applicable—duties which the Federal Circuit

has since decided are validly imposed.  See Defs.' Notice of Inadvertent Liquidation, Aug. 11,

2022, ECF No. 50 ("2022 Notice"); Defs.' Resp. to Ct.'s Letter, Oct. 29, 2024, ECF No. 59

("Defs.' Letter Resp.").

      Defendants assert that these liquidations were "inadvertent" and ask the court to enter

judgment "direct[ing] the United States, through CBP[,] to . . . reliquidate any

inadvertently-liquidated subject entries covered by the injunction where liquidation was not

consistent with Proclamation 10101."  Defs.' Letter Resp. at 2.  Plaintiffs oppose this request,

---

[3] Plaintiffs are entities that operate in the U.S. renewable energy industry; one, the Solar Energy Industries Association ("SEIA"), "is the national trade association for the U.S. solar industry, with hundreds of member companies . . . throughout the solar value chain, including importers, manufacturers, distributors, installers, and project developers."  Compl. ¶ 6, Dec. 29, 2020, ECF No. 2.  The other two, Invenergy Renewables, LLC and EDF Renewables, Inc., are U.S. companies that generate renewable energy.  Id. ¶¶ 8–9.

While all Plaintiffs challenged the validity of Proclamation 10101 in prior litigation before this court and on appeal, none was the importer of record for any of the Relevant Entries.  Their interest in this litigation derives instead from the fact that they are "adversely affected or aggrieved by the increase in safeguard duties."  Id. ¶ 16.  They allege that "[t]he increased duties are being passed on to NextEra, Invenergy, and EDF-R by their suppliers who are incurring the duties," id. ¶ 17, and that Proclamation 10101 threatens "SEIA's organizational interest . . . to grow solar energy in the United States," id. ¶ 20.  No standing-related issue has been (expressly) adjudicated so far, and no party raises one now.

Court No. 20-03941                                                                Page 4

"disagree[ing] with Defendants' plea that the Court grant [CBP] the authority to reliquidate entries

that were negligently liquidated in violation of this Court's Suspension Order."  Pls.' Br. in Resp.

to Ct.'s Order at 2, Nov. 22, 2024, ECF No. 64 ("Pls.' Br.").

The court must now decide whether to exercise its power in equity to permit the

reliquidation of entries that were liquidated (1) in violation of the Suspension Order, and (2) at a

lower duty rate than what the Federal Circuit has since decided is applicable.  Upon considering

the parties' able presentations and the circumstances of this case, the court declines to do so.

## BACKGROUND

### I.     *Legal Background*

#### A.     *Liquidation*

An importer that enters dutiable merchandise into the United States does not necessarily

pay the final amount of an import duty at the time of entry.  The importer instead deposits "the

amount of duties and fees estimated to be payable on such merchandise" with CBP.   19

U.S.C. § 1505(a).  Then, on a later date, CBP "liquidate[s]" the entry after "fix[ing] the final

classification and rate of duty applicable to such merchandise" and "fix[ing] the final amount of

duty to be paid on such merchandise and determin[ing] any increased or additional duties, taxes,

and fees due or any excess of duties, taxes, and fees deposited."  Id. § 1500(b)–(d); see also

id. § 1504 (providing for the "deemed" liquidation of entries on which CBP takes no action).  CBP

then "collect[s] any increased or additional duties and fees due, together with interest thereon, or

refund[s] any excess moneys deposited, together with interest thereon, as determined on a

liquidation or reliquidation."  Id. § 1505(b).  The liquidation of an entry is "final and conclusive

upon all persons (including the United States and any officer thereof) unless a protest is filed . . . or

unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade." Id. § 1514(a).

The U.S. Court of International Trade may "suspend" the liquidation of an entry pending judicial review that may affect the final applicable duty rate. See id. § 1504(a)(1) (referring to suspension "as required by statute or court order"). The court does so by issuing an injunction against CBP's liquidations of the entry (or entries) in question. 19 U.S.C. § 1516a(c)(2), which postdates § 1504(a)(1), provides for orders of this kind in connection with antidumping and countervailing duty proceedings. Even where § 1516a(c)(2) does not directly apply, the court's "broad injunctive powers," NTN Bearing Corp. of Am. v. United States, 892 F.2d 1004, 1006 (Fed. Cir. 1989), include the "authority to grant preliminary injunctions barring liquidation in order to preserve a party's right to challenge the assessed duties" in as broad a category of actions as "international trade cases," Qingdao Taifa Grp. v. United States, 581 F.3d 1375, 1378 (Fed. Cir. 2009). See also Oman Fasteners, LLC v. United States, 45 CIT __, __, 542 F. Supp. 3d 1399, 1409 (2021) (suspending the liquidation of entries pending appeal in an action under 28 U.S.C. § 1581(i) that involved a challenge to safeguard duties imposed through presidential proclamation).

### B.    Reliquidation

An entry that has been liquidated generally cannot be reliquidated, even upon a later judicial determination that the liquidated rate was inaccurate or inconsistent with law. See Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983); see also SKF USA, Inc. v. United States, 512 F.3d 1326, 1328 (Fed. Cir. 2008) ("[O]nce liquidation occurs the trial court is powerless to order the assessment of duties at any different rate."). Congress has provided limited

Court No. 20-03941                                                                                          Page 6

exceptions[4] to this general rule, of which only one is relevant here: "A liquidation made in accordance with [19 U.S.C. § 1500 or 1504] or any reliquidation thereof made in accordance with this section may be reliquidated in any respect by [CBP], notwithstanding the filing of a protest, within ninety days from the date of the original liquidation." 19 U.S.C. § 1501.

## II.    *Factual History*

Plaintiffs commenced this action on December 29, 2020, seeking a declaratory judgment that Proclamation 10101 is unlawful and a permanent injunction against its enforcement. <u>See</u> Compl. at 21. The court considered dispositive motions filed by both parties and entered summary judgment for Plaintiffs on November 16, 2021, setting aside Proclamation 10101 and enjoining Defendants "from taking any further action to effectuate or enforce" it. Judgment at 2, Nov. 16, 2021, ECF No. 44 ("USCIT Judgment"); <u>see also</u> <u>Solar Energy Indus. Ass'n v. United States</u>, 45 CIT __, __, 553 F. Supp. 3d 1322, 1343 (2021). Less than one month later, Defendants filed an unopposed motion for the issuance of the Suspension Order. <u>See</u> Mot. to Suspend. In that Motion, Defendants stated that "an order to suspend liquidation is necessary to ensure that entries of merchandise subject to <u>Proclamation 10101</u> remain unliquidated until the final disposition of the litigation, while also assisting [CBP] in complying with the Court's order enjoining defendants in this action from taking any further action to effectuate or enforce <u>Proclamation 10101</u>." <u>Id.</u> at 2. Defendants averred that suspending liquidation was necessary "to ensure that the United States

---

[4] <u>See, e.g.</u>, 19 U.S.C. § 1509(g)(2)(C)(ii); <u>Am. Signature, Inc. v. United States</u>, 598 F.3d 816, 828 (Fed. Cir. 2010) (explaining that "in an action challenging liquidation instructions under 28 U.S.C. § 1581(i), the Court of International Trade may, under certain circumstances, use its equitable powers to compel reliquidation of entries if a preliminary injunction has been sought and denied."); <u>Shinyei Corp. of Am. v. United States</u>, 355 F.3d 1297, 1312 (Fed. Cir. 2004) ("[S]hort of compelling legislative history or statutory evidence, we decline to find that the statute as a whole was intended to preclude judicial enforcement of court orders after liquidation.").

Court No. 20-03941                                                                                  Page 7

does not inadvertently violate the judgment while CBP takes necessary steps before it can

effectuate the judgment," id. at 4, and that "it is no longer the view of the Department of Justice"

that "reliquidation of otherwise final entries is available in appropriate circumstances in a case

brought pursuant to 28 U.S.C. [§] 1581(i)," id. at 3 n.3.

The court granted the Motion to Suspend and issued the Suspension Order on December

7, 2021. See Suspension Order. The court thereby enjoined Defendants:

> during the pendency of this litigation, including any appeals, from issuing
> instructions to liquidate or making or permitting liquidation of any entries of
> merchandise subject to the modifications to the safeguard measures on crystalline
> silicon photovoltaic cells, whether or not partially or fully assembled into other
> products, imposed by Proclamation 10101 pending final and conclusive disposition
> of this action, including all appeals.

Id. at 2. Defendants appealed from the USCIT judgment to the Federal Circuit the following

month. See Notice of Appeal, Jan. 14, 2022, ECF No. 48.

While the appeal was pending, Defendants notified this court "of inadvertent liquidations

that have occurred in a manner contrary to the Court's December 7, 2021 suspension of liquidation

order." 2022 Notice at 1. Defendants stated that "CBP has identified approximately 160 entries

that were liquidated after December 7, 2021, and for which it is clear based on the entry date and

liquidated tariff classification alone that such entries would be subject to Proclamation 10101, and

thus should not have been liquidated," and that "CBP has voided these unauthorized liquidations

in the agency's system of record, . . . consistent with this Court's prior holdings that liquidations

performed contrary to a court-ordered injunction are void ab initio." Id. at 3 (citations omitted).

Plaintiffs took no position on the 2022 Notice, stating that "because the Notice does not identify

the affected entries, Plaintiffs cannot meaningfully comment." Pls.' Resp. to 2022 Notice at 1,

Sept. 13, 2022, ECF No. 51. But Plaintiffs "reserve[d] all rights, including but not limited to

Court No. 20-03941                                                                              Page 8

opposing the Government's actions and legal authority to void liquidations without court approval

and without providing specificity that would allow for meaningful comment." Id. at 1–2.

      The Federal Circuit reversed the USCIT Judgment on appeal in November 2023, holding

that the President's interpretation of the safeguard statute did not reach the level of a "clear

misconstruction." Solar Energy Indus. Ass'n, 86 F.4th at 899. The Federal Circuit also sustained

this court's holdings that the President had complied with certain of the safeguard statute's

procedural requirements, see id. at 898–99,[5] and accordingly held that "Proclamation 10101 is not

invalid," id. at 902. The same Federal Circuit panel reheard the case and issued a further opinion

on August 13, 2024 that supplemented, but did not disturb, the opinion of November 2023. See

Solar Energy Indus. Ass'n, 111 F.4th at 1351. The appellate mandate issued to this court on

October 4, 2024. See Mandate.

      Eighteen days later, the court asked the parties whether "any matters require the court's

attention prior to the entry of judgment, including matters related to the current status of any

collected, refunded or pending safeguard duties." Ct.'s Letter to the Parties, Oct. 22, 2022, ECF

No. 58. That inquiry proved fruitful. Defendants responded that "CBP has identified some entries

---

[5] The Federal Circuit stated:

> Appellees renew their contentions that: (1) the petition leading to Proclamation
> 10101 was inadequate to meet the "on such basis" requirement of [19 U.S.C.
> §] 2254(b)(1)(B); (2) the President's finding that the domestic industry "has begun
> to make" a positive adjustment to import competition does not meet the statutory
> requirement that domestic industry "has made" such adjustment; and (3) the
> President failed to meet his obligation to weigh the economic and social costs and
> benefits of his alterations to the safeguard tariffs imposed by Proclamation 9693
> before issuing Proclamation 10101. The trade court rejected each of these positions
> and we do so as well.

Id. (citations omitted).

Court No. 20-03941                                                                    Page 9

of subject merchandise that were, regrettably, inadvertently liquidated, contrary to the December 7, 2021 order," and that "some of these entries were liquidated <u>consistent with</u> Proclamation 10101 and others were not." Defs.' Letter Resp. at 2. For the inconsistent entries (the "Relevant Entries"), the vast majority of which were liquidated at a lower duty rate than would have ultimately applied had CBP properly suspended liquidation pending appellate reversal of the USCIT Judgment, Defendants requested that the court direct reliquidation in its post-mandate judgment. <u>See id.</u> at 2; <u>see also</u> Defs.' Br. in Resp. to Ct. Order at 2, Dec. 9, 2024, ECF No. 65 ("Defs.' Br.") ("Of the 174 entries which must be reliquidated, 170 would need to be reliquidated with an increase in duty."). For the entries that were prematurely liquidated at what turned out to be the correct rate, Defendants proposed that the court order no further action. <u>See</u> Defs.' Letter Resp. at 2. Defendants' Letter Response made no reference to the unlawful liquidations that were the subject of the 2022 Notice. <u>See generally</u> <u>id.</u>

    In their own response Plaintiffs indicated, but did not present, their opposition to Defendants' request to reliquidate the Relevant Entries. <u>See</u> Pls.' Letter Resp. at 2, Oct. 29, 2024, ECF No. 60. The court then ordered briefing on the reliquidation issue. <u>See</u> Order, Nov. 6, 2024, ECF No. 61.

### III.    *Procedural History*

    Plaintiffs filed their brief in compliance with the court's November 6 order, <u>see</u> Pls.' Br., and Defendants timely responded two weeks later, <u>see</u> Defs.' Br. The court then ordered Plaintiffs to file a short reply, <u>see</u> Order, Dec. 11, 2024, ECF No. 66, and Plaintiffs timely complied, <u>see</u> Pls.' Reply, Jan. 6, 2025, ECF No. 67. The court scheduled oral argument for February 12, 2025. <u>See</u> Scheduling Notice, Jan. 22, 2025, ECF No. 68, and issued a letter to the parties that posed written questions for oral argument and solicited written responses, <u>see</u> Ct.'s Letter to the Parties

re: Oral Arg., Jan. 30, 2025, ECF No. 69.  The parties timely provided these responses.  See Pls.'

OAQ Resp., Feb. 10, 2025, ECF No. 74; Defs.' OAQ Resp., Feb. 10, 2025, ECF No. 75.  Oral

argument took place as scheduled.  See Notice of Oral Arg., Feb. 12, 2025, ECF No. 76.  The court

invited the parties to submit supplemental briefs after oral argument, see id., and the parties did

so, see Pls.' Post-Arg. Br., Feb. 20, 2025, ECF No. 77; Defs.' Post-Arg. Br., Feb. 20, 2025, ECF

No. 78.

## JURISDICTION AND REMEDIES

Jurisdiction initially lay under 28 U.S.C. § 1581(i), which gives the court

"exclusive jurisdiction of any civil action commenced against the United States, its agencies, or

its officers, that arises out of the law of the United States providing for . . . [the] administration

and enforcement" of tariffs and duties.  See Solar Energy Indus. Ass'n, 45 CIT at __, 553

F. Supp. 3d at 1330, rev'd, 86 F.4th 885.  The court resumed jurisdiction over this matter upon

receiving the mandate from the Federal Circuit.  "[E]very appellate court judgment vests

jurisdiction in the district court to carry out some further proceedings."  Exxon, 137 F.3d at 1483.

In exercising its jurisdiction, the court "shall possess all the powers in law and equity of,

or as conferred by statute upon, a district court of the United States."  28 U.S.C. § 1585.  The court

may also order any "form of relief that is appropriate in a civil action, including, but not limited

to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition."

Id. § 2643(c)(1).

## DISCUSSION

The subject of the parties' dispute is Defendants' request to reliquidate the 174 "Relevant

Entries" that CBP liquidated in violation of the Suspension Order between August 5, 2022 and

October 25, 2024, at a rate that is inconsistent[6] with Proclamation 10101. See Defs.' Br. at 2;

Defs.' OAQ Resp. at 5; Defs.' Post-Arg. Br. at 1.

Defendants rest this request on two alternative contentions, both of which Plaintiffs

oppose.[7]  The first is that CBP may reliquidate unlawfully-liquidated entries without a court order

authorizing that action.  See Defs.' OAQ Resp. at 4.  Defendants also contend that even if

reliquidation requires a court order, the circumstances of this case warrant that order's issuance.

See Defs.' Br. at 5–7.  The court finds neither of these contentions persuasive and explains its

reasoning below.

## I.    Reliquidation After Ninety Days Requires a Court Order

Defendants argue that CBP may lawfully reliquidate any entries whose initial liquidation

violated a court order.  They couch this argument in descriptive terms, stating that "[l]iquidations

performed contrary to a court-ordered injunction are considered to be void ab initio," and that "[i]n

circumstances when CBP ascertains that liquidation has occurred contrary to an operative

court-ordered injunction, CBP takes the administrative steps to reset the liquidation status of the

entries in its computer systems and therefore ensure continued compliance with the injunction."

Defs.' Br. at 3–4 (citations and footnote omitted).  Defendants base this assertion in part on

Allegheny Bradford Corp. v. United States, where the court held that "[l]iquidations in violation

---

[6] Interestingly, Defendants state (without elaborating) that four of these 174 proposed reliquidations "would result in a refund to the importer."  Defs.' Br. at 2 (footnote omitted).

[7] Plaintiffs do not appear to challenge the completed de-liquidations that Defendants described in the 2022 Notice.  See generally Pls.' Br.  Nor do they challenge the Defendants' request to liquidate entries that remain unliquidated in compliance with the Suspension Order.  See id. at 2.  Nor, finally, do they seem to challenge Defendants' proposed inaction with respect to liquidations that did not comply with the Suspension Order but were liquidated at a rate consistent with Proclamation 10101.  See id. at 9; Defs.' Letter Resp. at 2.

of a valid court order have no legal effect . . . ."  28 CIT 603, 612, 342 F. Supp. 2d 1162, 1169

(2004); see also AK Steel Corp. v. United States, 27 CIT 1382, 1388, 281 F. Supp. 2d 1318, 1323

(2003); Defs.' OAQ Resp. at 4.  Indeed, Defendants note, CBP has unilaterally undone an unlawful

liquidation outside the statutory ninety-day voluntary reliquidation period during this very case.

Defs.' Br. at 4 n.4; see also 19 U.S.C. § 1501.  Defendants elaborated as follows in their response

to a question posed by the court:

> We consider the inadvertent liquidations to be a legal nullity, because they occurred
> in contravention of a Court order.  In such circumstances, an order directing
> reliquidation is not required for CBP to place the affected entries back into
> unliquidated status.  Indeed, once CBP discovered the erroneous liquidations, it
> could have (and technically still could) return the entries to a suspended status.
> Such actions would be both permissible and necessary to come back into
> compliance with a court order.

Defs.' OAQ Resp. at 4.

    The problem with Defendants' argument is that an enjoined party is not empowered to

choose and implement the remedy for its own violations of an injunction.  That power belongs to

the court alone.  See Agro Dutch Indus. Ltd. v. United States, 589 F.3d 1187, 1192 (Fed. Cir. 2009)

("[A] broad array of remedies (including reliquidation) is available to the court to rectify the

unlawful liquidation." (emphasis added)).  And an enjoined agency certainly cannot choose a

remedy that Congress has specifically taken out of the agency's hands.  See Ivy Sports Med., LLC

v. Burwell, 767 F.3d 81, 86 (D.C. Cir. 2014) ("[A]ny inherent reconsideration authority does not

apply in cases where Congress has spoken.").  The relevant withdrawal of agency authority in this

case is 19 U.S.C. § 1501, which limits "voluntary" reliquidation to a ninety-day period.

    If Defendants seek to cure CBP's violations by de- or reliquidating entries after this

period—which first requires a legal determination that the original liquidations lacked legal effect,

and then a determination that a remedy is available—they must ask the court to make these

determinations and implement the appropriate remedy.  The court may conclude (for example) that it lacks the power to order reliquidation under the circumstances.  <u>See, e.g.</u>, <u>Target Corp. v. United States</u>, __ F.4th __, __, No. 2023-2274, 2025 WL 1152099, at *6 (Fed. Cir. Apr. 21, 2025) (explaining that "it is not the CIT's role to use inherent powers to override limits set by Congress's carefully crafted statutory scheme as recognized by binding precedent.").  Or the court may conclude (also for example) that "[w]hile finality is an important goal, the interest in finality must give way in the face of [the] more compelling interest . . . [of] effecting the intent of the parties and the court to prevent a premature liquidation while judicial review is ongoing."  <u>Agro Dutch</u>, 589 F.3d at 1193.

Whatever the outcome, the court's role in this process is essential.  As Defendants themselves acknowledge, "[a]bsent an order from the Court one way or another, the legal status of the inadvertently-liquidated entries . . . remains unclear."  Defs.' Post-Arg. Br. at 3; <u>cf. also</u> <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").  A liquidation's voidness <u>ab initio</u> is not a legal Excalibur that lends its power to whoever first retrieves it.  It is a judicial remedy that voids a liquidation with retroactive effect.  If reliquidation is an appropriate remedy for CBP's unlawful liquidation in this case, that is a matter for the court to consider[8] as it exercises its "broad remedial powers" in equity.  <u>Shinyei</u>, 355 F.3d at 1312; <u>see also</u> 28 U.S.C. §§ 1585, 2643(c)(1).

That is what the court did in <u>Allegheny Bradford</u>.  <u>See</u> 28 CIT at 613, 342 F. Supp. 2d at

---

[8] Any matter of whether CBP's de-liquidation of the entries described in the 2022 Notice was lawful is not before the court.  Plaintiffs did not object to those de-liquidations at the time, <u>see</u> Pls.' Resp. to 2022 Notice at 1, and they confine their argument now to the status of the Relevant Entries.  <u>See</u> Pls.' Br. at 11; Pls.' Post-Arg. Br. at 4.

1170 ("The proper means to enforce an order of this Court against the Government is to seek relief

in this Court . . . ." (quoting <u>Yacheng Baolong Biochem. Prods. Co. v. United States</u>, 27 CIT 992,

1009, 277 F. Supp. 2d 1349, 1364 (2003))).  When granting a subsequent application for attorney's

fees, the court explained further that "the court is unaware of any authority that would have led the

Government to believe that it is the province of administrative agencies to evaluate first whether a

violation of an order should be remedied."  <u>Allegheny Bradford Corp. v. United States</u>, 28 CIT

2107, 2112, 350 F. Supp. 2d 1332, 1337 (2004).

    The court's first opinion in <u>Allegheny Bradford</u> also described a situation where unilateral

agency action would be appropriate to correct a liquidation that violates a court order, noting with

alarm "the Government's subsequent refusal to rectify the situation" after CBP's discovery that it

had unlawfully liquidated entries in violation of an injunction.  28 CIT at 614, 342 F. Supp. 2d at

1171.  But there, CBP had notified interested parties of the error only eleven days after the

liquidation.  <u>Id.</u> at 607.  CBP was thus entitled to (but did not) correct its own error through

voluntary reliquidation under 19 U.S.C. § 1501.[9]  Here, more than eight hundred days elapsed

between the first unlawful liquidation of a Relevant Entry on August 5, 2022 and Defendants'

notice thereof to the court in their Letter Response of October 29, 2024.  The statutory deadline

for CBP to unilaterally undo the unlawful liquidation of the Relevant Entries passed long ago.

## II.    *Defendants Have Not Demonstrated their Entitlement to Equitable Relief*

    The question now becomes whether the court—and not CBP acting on its own

accord—will "rectify the unlawful liquidation" by ordering reliquidation of the Relevant Entries

---

[9] Until its repeal in 2004, 19 U.S.C. § 1520(c)(1) provided for voluntary reliquidation within one year.  <u>See</u> Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108-429, Dec. 3, 2004, 118 Stat. 2434.

at Defendants' request.  Agro Dutch, 589 F.3d at 1192.  The circumstances of this case do not

warrant that course of action.

      A judicial reliquidation order is an equitable exception to the general rule that liquidation

is final and unreviewable, which applies even if the liquidated rate is later adjudged to be incorrect.

See id. at 1190–91 ("Once an entry has been liquidated, the duties paid cannot be recovered even

if the payor subsequently prevails in its challenge to the antidumping order." (quoting Cambridge

Lee Indus., Inc. v. United States, 916 F.2d 1578, 1579 (Fed. Cir. 1990))); see also SKF USA, 512

F.3d at 1329 ("[A] court action [is] moot once liquidation occurs."); Cemex, S.A. v. United States,

384 F.3d 1314, 1324 (Fed. Cir. 2004) ("Customs' admittedly erroneous decision to liquidate falls

within the ambit of [19 U.S.C. § 1514(a)], which shields such decisions from challenge, without

regard for their legality.").

      The Federal Circuit has confirmed that equitable reliquidation is available in some

circumstances.  See Agro Dutch, 589 F.3d at 1192.[10]  But as with all forms of equitable relief,

which are "extended . . . only sparingly," Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990),

the party that seeks it must demonstrate its entitlement thereto.  See U.S. Bancorp Mortg. Co. v.

Bonner Mall P'ship, 513 U.S. 18, 26 (1994).  The status quo otherwise holds.

      Defendants have not demonstrated their entitlement to reliquidation here.  For one thing,

---

[10] The Federal Circuit recently declined to extend Agro Dutch to a scenario, inapplicable here, where in the absence of a preliminary injunction the Government's erroneous "liquidation occurred, and was allowed to occur, after a final judgment on the merits had been reached." Target, __ F.4th at __, 2025 WL 1152099 at *7.  This case more closely resembles Agro Dutch in that it involves the pre-judgment "liquidation of . . . entries by [CBP] after the court issued an injunction against liquidation."  589 F.3d at 1189.  Cemex, the case on which the Target majority relied, expressly distinguished the reliquidation of post-judgment liquidations from that of "liquidations in violation of an injunctive order."  Cemex, 384 F.3d at 1324 n.13; see also Target, __ F.4th at __, 2025 WL 1152099 at *8 (same).

Defendants caused the very harm from which they seek equitable relief. CBP liquidated entries in

violation of the court's Suspension Order; this was an illegal act that surely "has immediate and

necessary relation to the equity that [Defendants] seek[] in respect of the matter in litigation."

Gilead Scis., Inc. v. Merck & Co., 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting Keystone Driller

Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933)). Defendants are not the victims of

happenstance or unfair play by an adverse party; they seek reliquidation only because they

themselves acted in violation of the Suspension Order. And "equity has always treated as

contumacious those who take an actual part in the defendant's own violation of its injunction,

provided they have notice of the decree." NLRB v. Blackstone Mfg. Co., 123 F.2d 633, 635 (2d

Cir. 1941) (L. Hand, J.).

Nor do Defendants persuasively demonstrate that the "inadvertent" liquidations of the

Relevant Entries occurred despite diligent efforts to comply with the Suspension Order. As noted

above, the Relevant Entries were not the first that CBP liquidated in violation of the Suspension

Order. Defendants notified the court in 2022 that CBP had liquidated "approximately 160 entries

that were liquidated after December 7, 2021, and for which it is clear based on the entry date and

liquidated tariff classification alone that such entries would be subject to Proclamation 10101, and

thus should not have been liquidated." 2022 Notice at 3. This happened, Defendants stated,

because of "(1) unintentional administrative error (including a misunderstanding of instructions

and attendant programming errors), (2) CBP's system automatically liquidating entries on its

automated liquidation report prior to CBP being able to suspend them, and (3) timeliness in

applying instructions to suspend." Id. at 3 n.3.

This means that at the time the Relevant Entries were unlawfully liquidated, Defendants

(and specifically CBP) knew of both (1) the fact of the Suspension Order itself and (2) a pattern of previous violations of the Suspension Order that occurred due to three identified administrative snags.  Defendants evidently did not ensure that these violations would not happen again.  Their present filings, moreover, do not make clear whether the liquidations of the Relevant Entries stemmed from a recurrence of one of the three problems Defendants identified in 2022.  Their Letter Response refers only to "some entries of subject merchandise that were, regrettably, inadvertently liquidated, contrary to the December 7, 2021 order."  Defs.' Letter Resp. at 2. Defendants also refer in their brief to the daunting task of full compliance with the Suspension Order, pointing to the large number and wide geographic distribution of entries subject to Proclamation 10101.  See Defs.' Br. at 3 & n.3.  Still, they do not specifically describe how the Relevant Entries were unlawfully liquidated; they refer only in general terms to "the oversight that caused the erroneous liquidations."  Id. at 7.

    The court will not grant equitable relief on a showing of this nature.  The court does not doubt that Defendants and their counsel have acted in good faith at all stages of litigation.[11] However, "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (per curiam); see also United States v. Ames, 99 U.S. 35, 47 (1878) ("Courts of equity will not grant relief merely

---

[11] This case is thus unlike AK Steel, where the court observed that "[a]lthough Customs pleads inadvertence, which might be true of liquidations occurring before the relevant Ports received notice of instruction from Headquarters on April 28, that does not appear to be true of subsequent liquidations, some as late as July 2003, which more closely resemble deliberate inattention."  27 CIT at 1386 n.3, 281 F. Supp. 2d at 1321 n.3.  But while equity demands good faith (or "clean hands," see Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945)), that is a mere necessary condition.  See, e.g., Hecht Co. v. Bowles, 321 U.S. 321, 325 (1944) ("There is no doubt, however, of petitioner's good faith and diligence." (emphasis added)).

upon the ground of accident where the accident has arisen without fault of the other party, if it appears that it might have been avoided by inquiry or due diligence."). And "nothing can call a court of chancery into activity but conscience, good faith, and <u>reasonable diligence</u>, and where these are wanting, the court is passive and does nothing." <u>McKnight v. Taylor</u>, 42 U.S. 161, 168 (1843) (emphasis added).

The court agrees with Plaintiffs that Defendants' representations do not reflect proactive measures to avoid recurring violations of the Suspension Order.[12] <u>See</u> Pls.' Post-Arg. Br. at 3–4. Nor do the large volume and wide geographic distribution of the entries covered by the Suspension Order excuse those violations. <u>See</u> <u>Allegheny Bradford</u>, 28 CIT at 614, 342 F. Supp. 2d at 1171 ("For the court to excuse the Government's conduct on the grounds that it is busy would be to weaken the force and effect of any court order over the Government."). It was Defendants, after all, who asked the court to issue the Suspension Order in 2021. <u>See</u> Mot. to Suspend. If Defendants anticipated that the Suspension Order's imposition would introduce issues with scale and administrability, their Motion to Suspend could have reflected that concern.

If Defendants learned later on that unlawful liquidations were taking place, and the 2022 Notice confirms they did, their response to that red flag should have at least included measures to identify and reverse any further Suspension Order violations within at least ninety days of their occurrence. <u>See</u> 19 U.S.C. § 1501. But Defendants' Letter Response states that "[i]n response to the Court's letter, [CBP] has begun its review of its databases." Defs.' Letter Resp. at 2. This

---

[12] This case differs in this respect from <u>Nippon Steel Corp. v. United States</u>, another case involving reliquidation where the plaintiff "offer[ed] no evidence that in regard to the liquidations at issue [the] defendant . . . was even negligent, and d[id] not contest that defendant acted promptly to correct its error." 30 CIT 806, 808 (2006).

suggests that CBP did not implement any proactive compliance measures even after discovering the unlawful liquidations that were the subject of the 2022 Notice.[13]

       If Defendants have indeed acted since 2022 to address the issues they raised in the 2022 Notice, they have not informed the court of that fact. Defendants allude to their practice of informing the court of unlawful liquidations after they occur. See Defs.' Letter Resp. at 2. But while notice of non-compliance with a court order is laudable, it is no substitute for compliance.

       Defendants correctly note that "there is no serious question of this Court's authority to ensure compliance with its own orders." Defs.' Br. at 5. Even so, the fact that the court has this authority to provide an equitable remedy does not mean that the court must use it whenever possible. Such an arrangement, far from clarifying "the legal status of . . . inadvertently liquidated entries," Defs.' Post-Arg. Br. at 3, would make that status a function of wild cards like (1) whether CBP catches its own error, (2) whether a party lodges a reliquidation request, and (3) the timing of that request.

       "[E]nsuring compliance," moreover, does not always entail retroactively bringing about the outcome that would have pertained in a scenario of full compliance. Defs.' Br. at 5. What it does entail is that non-compliant actors bear the cost of their non-compliance. "The purpose of an injunction is to prevent future violations . . . ." United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953). It follows that the purpose of an injunction against liquidation is to prevent liquidation,

---

[13] For a non-binding but instructive analogy from the corporate law context, see In re Caremark Int'l Inc. Derivative Litigation, 698 A.2d 959, 967, 971 (Del. Ch. 1996) (explaining that Delaware's "director-protective business judgment rule" does not protect duty-of-care violations where "(1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of").

Case 1:20-cv-03941-GSK    Document 79    Filed 05/08/25    Page 20 of 21

Court No. 20-03941                                                                        Page 20

which in turn involves incentivizing enjoined parties to adopt preventative measures.  If the

Government could freely obtain a reliquidation order after liquidating entries in violation of an

injunction—if CBP, in other words, could always depend on the court to cure its violations—this

incentive would evaporate.  So too, as Plaintiffs point out, would the ability of interested parties

to rely on liquidation's status as "final and conclusive upon all persons."  19 U.S.C. § 1514(a); see

Pls.' Br. at 8.

        CBP bears the burden of strict compliance with all statutory and judicially-imposed

requirements related to liquidation.  See Allegheny Bradford, 28 CIT at 613–14, 342 F. Supp. 2d

at 1170–71 (pointing out that "[i]t should be uncontroversial to insist that court orders be obeyed,"

and that "[i]f noncompliance was unavoidable in this case, the cost of doing business should be

borne by the [G]overnment").  When an act of CBP violates these requirements, as Defendants

admit happened many times in this case, only a thoroughgoing equitable showing will move the

court to upset Congressionally-enshrined finality interests by granting retroactive relief.  See

Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980) ("[E]xperience teaches that strict adherence to

the procedural requirements specified by the legislature is the best guarantee of evenhanded

administration of the law.").  The court need not retrace the full taxonomy of circumstances where

equitable interests will overcome the default rule that liquidation is final in "the absence of an

express provision for reliquidation."  SKF USA, 512 F.3d at 1329 (citing Zenith, 710 F.2d at 810);

see also, e.g., Agro Dutch, 589 F.3d at 1192 (collecting cases).  Neither must the court consider

the wisdom of Plaintiffs' suggestions that equitable reliquidation be available only where it would

decrease an importer's liability, or where it would be readily protestable.  See Pls.' Br. at 5; Pls.'

OAQ Resp. at 5–6.

Court No. 20-03941                                                                                    Page 21

     For now it is enough to observe that when the Government erroneously liquidates entries in violation of a court order, and then seeks to reliquidate those entries at a higher rate more than ninety days afterwards, <u>see</u> 19 U.S.C. § 1501, it must do more than admit its mistakes to the court. At the very least, the Government must affirmatively demonstrate a commitment to compliant liquidation in the first place.  Because no such demonstration appears in the filings before the court, equity will not avail Defendants.  The court will apply the default rule that liquidation is final.

## CONCLUSION

     Judgment for Defendants will enter in accordance with the mandate.  The court will dissolve the Suspension Order without authorizing the reliquidation of the Relevant Entries.

                  /s/     *Gary S. Katzmann*
                  Gary S. Katzmann, Judge

Dated: <u>May 8, 2025</u>
       New York, New York